[No. 20775.    Department Two. — February 28, 1891.]

THE PEOPLE, RESPONDENT, *v.* WILLIAM McGREGAR, APPELLANT.

CRIMINAL LAW — BURGLARY — PREVIOUS CONVICTIONS — ARRAIGNMENT. — Upon the arraignment of a defendant charged with burglary and previous convictions, it is not error for the court to ask him whether he had suffered the prior convictions charged against him in the information.

ID. — READING OF INDICTMENT — PRESUMPTION — PERFORMANCE OF OFFICIAL DUTY. — Where the defendant has confessed the former convictions, the presumption is, that the clerk performed his duty in reading the indictment to the jury, and omitted to read that part of the indictment which related to the prior convictions, and this presumption is not overcome by a statement in the record "that the information charging the defendant with the above crime was read, and plea of not guilty stated to the jury."

ID. — ATTEMPT TO COMMIT BURGLARY — SENTENCE — FORMER CONVICTIONS. — Where the record shows that the defendant had suffered former convictions, a sentence of ten years' imprisonment for an attempt to commit burglary does not exceed the maximum term allowed.

ID. — ORAL CHARGE — SHORTHAND REPORTER — PRESUMPTION UPON APPEAL. — Where the contrary does not appear in the record, it will be presumed that the law was obeyed, and that the oral charge of the court was taken down by the shorthand reporter.

ID. — DEGREE OF BURGLARY — STATEMENT OF TESTIMONY. — A statement by the court in its instructions that the testimony showed that it was three or four o'clock in the morning when the attempt was made, in con-

nection with a charge that it would be necessary to find the degree of the crime, and that if the attempt was made in the night-time, it would be an attempt to commit burglary in the first degree, could not have prejudiced the defendant, where the testimony shows without conflict that the attempt was made in the night-time.

ID. — PROOF OF VENUE — STREETS OF SAN FRANCISCO. — Where the indictment charges that the offense was committed on a certain street in the city and county of San Francisco, proof that the crime was committed on that street, in connection with which several of the principal and best-known streets of San Francisco are mentioned in the testimony, is sufficient to warrant the jury in sustaining the venue, although the witnesses did not testify directly that any of the streets named were in San Francisco.

ID. — JUDICIAL NOTICE — CIRCUMSTANTIAL EVIDENCE. — The question as to the location of the streets named by the witnesses is not a strict question of judicial knowledge, but is, whether, under all the circumstances of the case, there was sufficient evidence to warrant the jury in concluding that the crime was committed in San Francisco.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*Carroll Cook,* and *J. E. Foulds,* for Appellant.

*J. D. Page,* and *Attorney-General Hart,* for Respondent.

McFARLAND, J.— The defendant was convicted of an attempt to commit burglary in the first degree, and appeals from the judgment, and order denying a new trial. Several points are relied on for a reversal of the judgment.

1. It was not error for the court to ask the defendant upon his arraignment whether he had suffered the prior convictions charged against him in the information. (*People* v. *Wheatley, ante,* p. 114, and cases there cited.)

2. It does not appear that the clerk read to the jury that part of the indictment which charged defendant with prior convictions. As the defendant had confessed the former convictions, the presumption is, that the clerk performed his duty as prescribed in section 1093 of the Penal Code, and omitted that part of the indictment

which related thereto; and this presumption is not over-come by anything in the record, which merely states that "the information charging the defendant with the above *crime* (not crimes) was read and *plea* (not pleas) of not guilty stated to the jury." No objection was made at the time, and it is quite clear that there is no affirm-ative showing of error on this point.

3. The sentence — ten years — does not exceed the maximum term of imprisonment; for the record shows that the defendant had suffered former convictions.

4. Assuming that the record must show a recital of the matters referred to in section 1200 of the Penal Code, and that the section is not merely directory, still it ap-pears from the record in this case that the directions of said section were quite fully complied with.

5. It does not appear that the oral charge of the court was *not* taken down by the reporter; and where the con-trary does not appear, it will be presumed that the law was obeyed.

6. The jury having first returned a verdict of "guilty as charged," the court informed them that it would be necessary to find the degree of the crime, and that if the attempt was made in the night-time, it would be an at-tempt to commit burglary in the first degree; and in that connection the court told the jury that "the testi-mony was, it was three or four o'clock in the morning." It is contended that this language last quoted was erroneous. It is not necessary to determine whether the use of this language was the mere exercise of the consti-tutional power of a judge to "state the testimony" or a violation of the mandate that "judges shall not charge juries with respect to matters of fact" (Const., art. 6, sec. 19); for the only evidence upon which defend-ant could have been convicted at all showed, without conflict, that the attempt was made in the night-time. Defendant therefore could not have been prejudiced by the remark of the court.

7. The gravest point made by appellant is the one based upon the alleged failure to prove the *venue*. Of course, there must be sufficient proof of the venue in every criminal case, and experienced prosecuting attorneys are generally careful to make such proof at an early stage of the trial. In the case at bar the prosecution seem to have entirely overlooked the necessity of asking any questions on that subject. But notwithstanding that oversight, there was, we think, sufficient evidence to warrant the jury in finding that the crime charged was committed in the city and county of San Francisco, there being no evidence tending to show the contrary. The information was entitled in the superior court of said city and county, and charged that the crime was committed "at the said city and county of San Francisco, state of California," at a certain house on "Grant Avenue." The jurors were citizens and residents of San Francisco, and the court-house in which they sat while defendant was being tried was near the center of the city. The principal witness for the prosecution testified that on the night of the alleged crime he was a police-officer " on regular force"; that on said night he was on duty "on Grant Avenue, from Market to Bush," and that territory was his "regular beat"; and that when he first saw defendant that night he was in an alley called Stockton Place, "off Grant Avenue, between Post and Sutter." And it was shown that the crime, if committed at all, was committed on said Grant Avenue at a certain house adjacent to said Stockton Place. Thus a half-dozen of the principal and best-known streets of the city of San Francisco were named between or upon which the crime was committed; and although, from a failure to ask them, the witnesses did not testify *directly* that these streets were in the prominent city of San Francisco, in which the court was sitting, still we think that the evidence, taken in connection with the surrounding circumstances, was sufficient to justify the jury in finding

as jurors, what they well knew as men, that the streets named by the witnesses meant the well-known streets so named in San Francisco.

In *Brady* v. *Page,* 59 Cal. 52, and *Whiting* v. *Quackenbush,* 54 Cal. 306, this court seems to have held that judicial notice would be taken of the streets of San Francisco; although there may be some points of distinction between those cases and the one at bar.

In *People* v. *Manning,* 48 Cal. 335, the court says: "Another point made is, that the venue was not proved. No witness testified in so many words that the killing occurred in the city and county of San Francisco. But the whole testimony, taken together, left no room for a reasonable doubt on this point. We think the venue sufficiently proved." In that case, the killing was shown to have been done on Clay Street, without any direct evidence that Clay Street was in San Francisco; but it may be claimed that Clay Street could have been located by reference to other named streets which were shown to be in the city.

In *State* v. *Burns,* 48 Mo. 438, the witness spoke of the murder as taking place on Mullanphy Street, but it was not expressly stated anywhere that Mullanphy Street was in the county or city of St. Louis," and the supreme court of Missouri say: "If there was evidence to reasonably satisfy the jury that the crime was committed in the city, that was sufficient. . . . . The question of venue or jurisdiction is always a question of fact, and may be proved like any other fact. If the evidence raises a violent presumption that the offense for which the person is indicted was committed in the county where he was tried, it is sufficient. (1 Wharton's Crim. Law, sec. 601.)"

In *State* v. *Ruth,* 14 Mo. App. 226, it was testified that the stolen property was taken from a boarding-house, No. 1203 Washington Avenue, and that defendant was seen with it in a shop on Christy Avenue, and the court say: "It is true that no witness says, in so many words,

that the offense was committed in the city of St. Louis. But this is not necessary. It is enough if the testimony was such as to satisfy the trier of the fact that the place of the offense was that laid in the information." And speaking of certain cases referred to, the court continues as follows: "In neither case could there be any doubt in the minds of the triers of the fact, or of the judges of the appellate court, that the streets spoken of by the witnesses were St. Louis streets. We will not take judicial notice of *all* the streets of the city in which this court holds its sessions. But we need have no difficulty in judicially recognizing the fact that Washington Avenue, Morgan Street, and Christy Avenue are old-established and well-known streets of St. Louis, — the city in which we sit as a court, — and that this knowledge prevails generally throughout the city, and must have been possessed by the trier of fact in the present case."

*Bland* v. *People*, 4 Ill. 364, *Beavers* v. *State*, 58 Ind. 530, and *Commonwealth* v. *Costley*, 118 Mass. 3, are all to the point that inferential evidence is sufficient to establish venue.

The foregoing cases are authorities which fortify the conclusion on this point which we have above stated. The question here is not a strict question of judicial knowledge. The question is, whether, under all the circumstances of the case, there was sufficient evidence to warrant the jury in concluding that the crime was committed in San Francisco, and, as before said, we think that it was sufficient.

8. We do not think that the evidence was insufficient to sustain the verdict upon the merits; nor do we think that the court abused its discretion in refusing to grant a new trial on the ground of newly discovered evidence.

The judgment and order appealed from are affirmed.

DE HAVEN, J., and SHARPSTEIN, J., concurred.

Hearing in Bank denied.