[Crim. No. 952. Third Appellate District.—February 28, 1927.]

## THE PEOPLE, Respondent, v. JAMES O'CONNOR et al., Appellants.

[1] CRIMINAL LAW—DEFENDANTS NOT JOINTLY CHARGED—JOINT TRIAL —JURISDICTION — IMPANELMENT OF JURY — CHALLENGES.—A trial court has no authority to order, over the objection of defendants not jointly charged, a joint trial of such defendants, and to proceed with the trial with a jury in the impanelment of which the rights of such defendants are not allowed to be exercised.

[2] ID.—JOINT TRIAL—CHALLENGES.—The rule relating to the number of challenges to which defendants may be entitled when jointly tried, in the absence of a statute relating thereto, is that each defendant may challenge peremptorily the full number of jurors to which he would be entitled if tried alone.

---

2. Number of challenges allowed joint defendants, note, Ann. Cas. 1914A, 860. See, also, 16 R. C. L., Jury, sec. 68; 15 Cal. Jur., Jury, sec. 105.

[3] ID. — WORDS AND PHRASES. — DEFINITION OF "PROCEDURE." — As generally defined, "procedure" includes in its meaning whatever is embraced by the three technical terms, pleading, evidence, and practice.

[4] ID. — PROCEDURE — SECTION 4½, ARTICLE VI, CONSTITUTION—CONSTRUCTION OF.—Section 4½ of article VI of the constitution must refer to pleading and procedure as authorized by the codes; and it cannot reasonably be held that said section is so broad in its meaning as to permit the trial court to disregard the usual and ordinary procedure in the trial of a cause and adopt a new and entirely different manner from that recognized by law.

[5] ID.—JURY TRIAL—PREVENTION OF—CONSTITUTIONAL LAW.—Section 4½ of article VI of the constitution cannot be relied upon to prevent a reversal of a judgment in a criminal prosecution where the defendants were deprived of the right of trial by jury, as it should have been constituted by law, in that they were compelled to go to trial before jurors whom they were entitled to reject.

[6] ID. — ROBBERY — EVIDENCE—IDENTIFICATION.—In a prosecution for robbery alleged to have been committed by several defendants, one of whom pleaded guilty and was sentenced, no testimony in reference to the information filed against the latter, his plea of guilty, his sentence thereon, and what he might have said to the officers in the absence of other defendants, is admissible, whether the person who was recognized at the robbery was identified as the defendant who pleaded guilty.

---

(1) 16 C. J., p. 782, n. 34.   (2) 35 C. J., p. 412, n. 49.   (3) 32 Cyc., p. 405, n. 38.   (4) 17 C. J., p. 369, n. 6.   (5) 17 C. J., p. 369, n. 6.   (6) 16 C. J., p. 659, n. 29.

APPEALS from judgments of the Superior Court of Yolo County and from orders denying new trials. W. A. Anderson, Judge. Reversed.

The facts are stated in the opinion of the court.

J. H. Langenour, J. G. Bruton, Neal Chalmers, Percy Napton and A. C. Huston, Jr., for Appellants.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

---

6. See 1 R. C. L., Admissions, sec. 18; 8 Cal. Jur., Criminal Law, sec. 184.

PLUMMER, J.—Appellants were convicted in the trial court and prosecute appeals from the orders denying new trials and from the judgments of conviction.

On the twenty-fourth day of March, 1926, an information was presented to the trial court and thereafter filed with the clerk thereof jointly charging the defendants, Herbert Fitzgibbons and James O'Connor, with two offenses, to wit: The crime of burglary alleged to have been committed by the said Herbert Fitzgibbons and James O'Connor on or about the twenty-eighth day of February, A. D. 1926, in that in the county of Yolo, in the state of California, said defendants did then and there feloniously, etc., enter a certain dwelling-house owned and occupied by one W. A. Lillard; and, for a second offense in the second count, the said Herbert Fitzgibbons and James O'Connor were charged with having on the twenty-eighth day of February, 1920, in the county of Yolo, forcibly and feloniously taken from the possession and immediate presence of W. A. Lillard, Mrs. W. A. Lillard, and Tom Lillard certain personal property, to wit: Jewelry, United States money, personal effects, firearms, and other personal property, then and there of the value of $100; that said taking was accomplished by said defendants by means of force, violence, intimidation, etc.

On the fifth day of April, 1926, the said James O'Connor and Herbert Fitzgibbons were arraigned, attorneys appointed to defend the respective defendants, and upon being arraigned, the said defendants respectively pleaded "not guilty," and the court then set said case for trial for June 2, 1926, at 10 o'clock A. M. ·

Thereafter and on the twentieth day of April, 1926, an information was filed in the superior court of Yolo County against the defendants, John Franks and Edward Brock, in which information said defendants were jointly charged first with the crime of burglary, in that the said John Franks and said Edward Brock did, on or about the twenty-eighth day of February, in said county of Yolo, unlawfully, feloniously, etc., enter a certain dwelling-house of W. A. Lillard, with intent to commit the crime of larceny, and, in the second count in the same information, said John Franks and Edward Brock were accused by the district attorney of Yolo County of the crime of robbery, in that the said John Franks and Edward Brock, on or about the twenty-eighth day of February, A. D. 1926, in the county of Yolo, did

then and there wilfully, unlawfully, forcibly, etc., take from the possession and immediate presence of W. A. Lillard, Mrs. W. A. Lillard, and Tom Lillard, certain personal property, to wit: Jewelry, United States money, personal effects, firearms and other personal property, then and there of the value of $100; that said taking was accomplished by means of force, violence, and intimidation.

On the twenty-sixth day of April, 1926, the said defendants John Frank and Edward Brock were arraigned upon the information jointly charging them with the offenses herein named, and upon being arraigned, the defendant John Franks pleaded guilty and the defendant Edward Brock pleaded not guilty. The court thereupon set the trial of the defendant Edward Brock for June 2, 1926, at 10 o'clock A. M., "to be tried jointly with the defendants O'Connor and Fitzgibbons."

Upon the second day of June, 1926, Herbert Fitzgibbons and James O'Connor, jointly charged, as aforesaid, appeared with their counsel and objected to the trial of said defendants with the defendant Edward Brock, jointly charged with the defendant John Franks. The defendant Edward Brock, jointly charged with John Franks, likewise objected to being tried jointly or at the same time with the defendants James O'Connor and Herbert Fitzgibbons, jointly charged in the first information herein referred to. The court overruled the objections of the respective defendants and also denied the motions of each one of said defendants for separate trials. The defendants were each, respectively, found guilty of burglary and also of robbery, and, following their convictions, they entered motions in arrest of judgment and motions for new trials, all of which were denied. From these orders and the judgments of conviction appeals are prosecuted.

The record shows that the two informations referred to, to wit; the one jointly charging O'Connor and Fitzgibbons and the one jointly charging Franks and Brock, were read to the jury and separate verdicts as to each one of the defendants submitted to and found by the jury and separate judgments entered against each one of the defendants. [1] Whether the trial court has power to order joint or simultaneous trials of defendants not jointly charged by

informations or indictments is the vital question involved in this appeal.

On the part of the People it is urged that section 954 of the Penal Code, while not expressly permitting such a course, is sufficiently broad and comprehensive in its terms to justify the trial court in directing a joint, or from what appears in this case to be a simultaneous, trial of defendants charged in different informations or indictments. On the part of the appellants it is argued that section 954, *supra,* authorizes no such procedure. It is further contended by the appellants that section 1098 of the Penal Code is the only provision of the code referring to the trial of defendants jointly charged, and that defendants not jointly charged cannot be jointly or simultaneously tried against their objections.

Section 954 of the Penal Code referred to reads as follows: "The indictment or information may charge two or more different offenses connected together in their commission, or different statements of the same offense, or two or more different offenses of the same class of crimes or offenses, under separate counts, and if two or more indictments or informations are filed in such cases the court may order them to be consolidated. The prosecution is not required to elect between the different offenses or counts set forth in the indictment or information, but the defendant may be convicted of any number of the offenses charged, and each offense upon which the defendant is convicted must be stated in the verdict; provided, that the court, in the interest of justice and for good cause shown, may, in its discretion, order that the different offenses or counts set forth in the indictment or information be tried separately, or divided into two or more groups and each of said groups tried separately." In the construction of this section, subdivision 7 of section 2 of the same code, wherein it specifies that the singular number includes the plural, must be read in connection therewith, in so far as the word "defendant" is used, i. e., the word "defendant" in section 954 includes the plural "defendants," as well as the singular number "defendant," and therefore relates to informations or indictments, which charge one or more persons with the commission of certain offenses. Thus, in the case at bar, take the information wherein the defendants O'Connor and Fitz-

gibbons are jointly charged with the crime of burglary and the crime of robbery. If separate informations had been filed against said defendants charging them jointly in one information with burglary and in a second information charging them jointly with robbery, the section of the code referred to authorizes the court to consolidate such informations and thereafter try said informations as one information containing two counts. There is nothing in the language of the section of the code, unless we read into it an intendment of the legislature, which authorizes the consolidation of separate informations against separate and distinct defendants. The only section of the Penal Code relating to joint trials is section 1098, which reads as follows: "When two or more defendants are jointly charged with any public offense, whether felony or misdemeanor, they must be tried jointly, unless the court order separate trials. In ordering separate trials, the court in its discretion may order a separate trial as to one or more defendants, and a joint trial as to the others, or may order any number of the others at different trials, or may order a separate trial for each defendant. If the defendants are tried jointly, the state and the defendants shall be entitled to the number of challenges prescribed by section 1070 of this code, which challenges on the part of the defendants must be exercised jointly. Each defendant shall also be entitled to five additional challenges which may be exercised separately; the state shall also be entitled to additional challenges equal to one-half the number of all the additional separate challenges allowed the defendants, any fraction to be regarded as an additional challenge." This section is by its express terms restricted to the joint trial of the defendants jointly charged. It contains no reference whatever to the joint trial or trials of defendants separately charged. Under the terms of section 1098, *supra,* where defendants are jointly charged and jointly tried, the defendants named in the informations or indictments are entitled first to ten challenges, if the offense is other than that which necessarily carries a sentence of death or life imprisonment, which must be exercised jointly, and, in addition thereto, each defendant is entitled to five challenges to be exercised separately. In support of the theory that the section referred to authorizes joint trials of defendants separately informed against or

indicted, our attention is called to the cases of *Turner* v. *United States,* 66 Fed. 280; *Dolan et al.* v. *United States,* 133 Fed. 440; *Pointer* v. *United States,* 151 U. S. 396 [38 L. Ed. 208, 14 Sup. Ct. Rep. 410, see, also, Rose's U. S. Notes]; *Bennett* v. *United States,* Fed. Cas. No. 14,572; *Williams* v. *United States,* 168 U. S. 382 [42 L. Ed. 509, 18 Sup. Ct. Rep. 92]. In the case of *Turner* v. *United States, supra,* it was held that two indictments may be consolidated under the terms of United States Revised Statutes, section 1024, but an examination of the facts in that case shows that the two indictments were both against the same defendants and the indictments being consolidated were treated as one indictment with four counts against the defendants, who were jointly indicted in both the indictments. In *Dolan et al.* v. *United States, supra,* it was again held that section 1024 of the United States Revised Statutes, which authorizes the joinder in one indictment of charges and the consolidation of indictments against the same person for the same act or transaction, or for two or more acts or transactions connected together, or of the same class of crimes or offenses "which may be properly joined," permitted the consolidation of the offenses charged in that case. Here again, however, the indictments were all against the same defendants and were not separate indictments against separate and distinct defendants. In *Pointer* v. *United States,* 151 U. S. 396 [38 L. Ed. 208, 14 Sup. Ct. Rep. 410], only one defendant was involved and he was charged with two murders committed at the same time and by the same means. In the case of *Bennett* v. *United States,* Fed. Cas. No. 14,572, *supra,* the indictment contained separate counts against one person and it was held that the charges set forth in separate counts were proper to be included in one indictment. In *Williams* v. *United States,* 168 U. S. 382 [42 L. Ed. 509, 18 Sup. Ct. Rep. 92], the two indictments involved in that case were against the same defendants and it was held that the district court committed no error in ordering their consolidation. It is there, however, pointed out that the case under consideration differs from those wherein the indictments are against different persons. In *Betts* v. *United States,* 132 Fed. 228, we have a case very similar to the one at bar. There it was ordered that the several indictments should be tried together, and upon

each indictment separate verdicts were returned. This was held error. The court refers to the section relative to the consolidation of indictments and says: "Plainly, the indictments were not consolidated, because the record shows that there were separate verdicts and cumulative sentences, so that each proceeding retained its identity. The entire effect of the order was only that the various indictments were tried together by the same jury." There was no order made in the case at bar for the consolidation of the informations. It was simply an order for the trial of the defendants jointly, which was, in effect, that they were to be tried together before the same jury, the identity of each information was mentioned throughout the trial, separate verdicts, sentences, etc. In view of these circumstances, the court in *Betts* v. *United States, supra,* uses the following language: "We have not referred to section 1024 of the Revised Statutes (U. S. Comp. Stats. 1901, p. 720), which relates especially to consolidations of indictments. This section originated in 1813. So far as we can discover, both sections, under proper rules of construction, have full effect. So far as the topic we are discussing is concerned, section 1024 makes no provision for trying indictments together, but only that the court may order them to be consolidated. If this means anything more than was done in the present case, it certainly could have no just application to the indictment at bar." The court then cites a number of cases wherein consolidations were permitted, as we have herein stated, and also cases wherein consolidations were not permitted, being cases where the indictments were against different defendants. In *McElroy* v. *United States,* 164 U. S. 76 [41 L. Ed. 355, 17 Sup. Ct. Rep. 31, see, also, Rose's U. S. Notes], separate indictments against separate defendants were consolidated and upon appeal such consolidation was held error and the judgment reversed. In considering the consolidation of such indictments, the court there said: "It is admitted by the government that the judgments against Stufflebeam and Charles Hook must be reversed, but it is contended that the judgments as to the other three defendants should be affirmed because there is nothing in the record to show that they were prejudiced or embarrassed in their defense by the course pursued. But we do not concur in this view. While the general rule is that

81 Cal. App.—33

counts for several felonies of the same general nature, requiring the same mode of trial and punishment, may be joined in the same indictment, subject to the power of the court to quash the indictment or to compel an election, such joinder cannot be sustained where the parties are not the same and where the offenses are in nowise parts of the same transaction and must depend upon evidence of a different state of facts as to each or some of them. It cannot be said in such case that all the defendants may not have been embarrassed and prejudiced in their defense, or that the attention of the jury may not have been distracted to their injury in passing upon distinct and independent transactions. The order or consolidation was not authorized by statute, and did not rest in mere discretion." This case goes further than is warranted by the circumstances of the case at bar, but the general language used therein to the effect that indictments cannot be consolidated when against different defendants is pertinent. In *United States* v. *Durkee*, Fed. Cas. No. 15,008, we have an exactly parallel case, presenting the same questions which we are here considering. It was there held that whenever there are several charges against one person or persons for the same act or transaction, the whole may be joined in one indictment in separate counts, and if two or more indictments shall be found in such cases, the court may consolidate them, but this does not authorize the consolidation of separate indictments against different persons, although the offense was joint *and they might have been jointly indicted.* For the error of the court in consolidating the indictments the judgment was reversed. In *United States* v. *McConnell*, 285 Fed. 164, the same ruling was had as laid down in the case of Durkee, *supra.* In *De Luca* v. *United States*, 299 Fed. 741, the court on page 744 of the same volume, in relation to consolidation of indictments, states: "The statute refers to several charges, which shall be against the same person, and when the charges are against more than one person, there can be no consolidation by the court, unless all the defendants are identical in all the indictments." The authorities which we have herein referred to are cited in the opinion of that case. It will be noted that the court held that to authorize the consolidation of indictments, the defendants in the several cases must be identical. The rule that the

defendants must be identical to warrant consolidation of indictments is also found in section 1042 of Bishop's Criminal Procedure. In the absence of a statute, the question whether a defendant may be tried upon two indictments at the same time, the indictments being consolidated, there is a diversity of opinion. See *Lucas* v. *State,* 144 Ala. 63 [3 L. R. A. (N. S.) 412, 39 South. 821]. Where the indictments, however, are against different defendants, there appear to be no cases holding that such indictments may be consolidated or a joint trial on each indictment had against the objections of the defendant. While there appears some loose language as to the meaning of the terms ''consolidating indictments and joint trials,'' they are separate and distinct, as pointed out in the case of *Betts* v. *United States,* 132 Fed., on page 234, *supra.* Where consolidation is had, there is thereafter but one complaint, information, or indictment, but where joint trials are had, the identity of each case is maintained. This definition is taken in that case from proceedings had in civil cases, but it is there held that the same interpretation applies to criminal trials.

In the case at bar, neither information refers to the other, that is to say, the information jointly charging O'Connor and Fitzgibbons with the commission of the specified offenses makes no reference to any participation therein by either Franks or Brock. Likewise, the information jointly charging Franks and Brock with the commission of said offenses makes no mention of the participation therein of either O'Connor or Fitzgibbons; that is to say, so far as the initiatory proceedings are concerned and the fixing of the rights of the parties to their trials, there is nothing appearing in the record to indicate that the offenses were not entirely separate and distinct. Under such circumstances, it would appear that the reasoning of the court in *People* v. *Degnan,* 70 Cal. App. 567 [234 Pac. 129], applies. It is there said that in determining the effect of an information consisting of two counts, one charging assault with intent to commit murder and the other rape, as against a demurrer on the ground that more than one offense is attempted to be charged in said indictment, except as provided in section 954 of the Penal Code, in this, that the said indictment charges or attempts to charge two different offenses, which

do not appear from said indictment to be different statements of the same offense, etc., the appellate court may only look to the face of the pleadings. In determining the rights of the parties to separate trials and the correlative rights which pertain thereto which we are soon to consider, the trial court can look no further than the language of the informations. It is manifest that the right which the law gives under the informations or indictments cannot be withheld or denied, simply because in the course of the trial evidence may be adduced, which would have authorized the prosecutor to have filed a different information or a grand jury to have presented a different indictment, which would have subjected the defendant to a more limited or different exercise of his rights during the initiatory and preliminary course of the trial.

In *Taylor* v. *State,* 20 Ala. App. 133 [101 South. 93], the court, in considering the question of consolidation of indictments in felony cases where the defendants were not the same in each indictment, used this language: "We know of no law which authorizes the consolidation of felony cases where the parties are not jointly indicted, and in this case taking the records of the court as importing verity, it was not done." For this reason, the judgment of the trial court was reversed.

There is an entire want of decisions in this state where the question has been presented in the form it now comes before us for consideration, but, in the case of *People* v. *Plyer,* 121 Cal. 160 [53 Pac. 553], the opposite side of this issue was presented and the holding there supports the reasoning which we have herein set forth. In the Plyler case "the defendant and one Schoedde were together held over for trial. In due time the district attorney filed separate informations against them. This precluded a joint trial, and defendant insists that it was error. 'The argument advanced is that after the defendants had been jointly held for trial the district attorney had no power other than to file a joint information against them; that the defendants were of right entitled to a joint trial, and each to the aid and assistance of the other in his defense.' This right was denied them by the course which the prosecuting officer adopted. It is further said that the law gives to defendants jointly charged the privilege of separate trials (Pen.

Code, sec. 1098), but secures no such right to the People. It is true that the law, contemplating the embarrassments which may arise to defendants upon joint trials, and the desire which one may have to make a defense not acceptable to his co-defendants, has humanely accorded the privilege of separate trials. But that is aside from the vital question. Is it mandatory upon the district attorney under the indicated circumstances to file a joint information? We are not advised of any law so declaring. It is within his discretion to inform against them either jointly or severally. The state may determine whether it will proceed against defendants accused of the commission of a single crime, either jointly (with the privilege to each of them of securing a separate trial) or separately, as was done in this instance. Unquestionably a grand jury may so return indictments, and the same course should be and is open to the district attorney." Thus, in that case, the election of the People to file separate informations fixed the rights of the parties and, in the language of the opinion, "precluded a joint trial." The opinion in that case further shows that the defendants jointly participated in the commission of the offense charged, but the rights of the parties separately informed against were fixed and determined according to the code provisions relating to the trial of separate defendants and the right to a joint trial under such circumstances did not exist. The conclusion seems inescapable that if the right of a joint trial does not exist where the informations or indictments are separate, the court has no power or authority to order a joint trial. The court, in passing upon this question, cites section 1098 of the Penal Code as the one governing the question of joint and separate trials. This section of the code has been amended since the rendering of the opinion on the Plyler case, but not as to anything included in that case. The amendment relates only to the elimination of separate trials where the defendants are jointly indicted and providing for the exercise of challenges in such cases.

The status of the rights of the defendants, as fixed by the informations, directly bear upon and determine the challenges that may be exercised by the defendant or defendants upon the impanelment of the jury. There is no code provision in this state relating to the challenges to be exercised by defendants jointly tried upon separate informations.

Section 1098 of the Penal Code relative to challenges relates only to defendants "jointly charged." In such cases, the defendants jointly charged are entitled to exercise ten joint challenges and five separate challenges each, except where the offenses charged allow twenty joint challenges. Thus, O'Connor and Fitzgibbons, being jointly charged, were entitled to exercise ten joint challenges and were then respectively entitled to five separate challenges, aggregating twenty challenges in all. The defendant Brock, being separately charged, was entitled, there being nothing in the codes to the contrary, to the number of challenges given to him by the codes, based upon the information filed against him and had separate and distinct right to ten peremptory challenges. Thus, if the law permitted and authorized the joint trial of the defendants, when separately informed against, the number of peremptory challenges allowed by law in this case would have been thirty. The court limited the defendants to twenty-five peremptory challenges in the following manner: Ten challenges to be exercised jointly by all the defendants, five challenges each separately. By the ruling of the court, the defendants O'Connor and Fitzgibbons were limited to seventeen peremptory challenges, three of the challenges of the first ten counted by the court as joint challenges exercised by the attorney for the defendant Brock was counted as against the defendants O'Connor and Fitzgibbons. Defendants O'Connor and Fitzgibbons sought to exercise the challenges which we have just stated that section 1098 of the Penal Code accorded them, but the exericse of this right was denied by the court. It does not appear that the defendant Brock sought to exercise the full number of ten challenges, which, we have stated, he was entitled to, nor that the defendant Brock sought to exercise all the peremptory challenges which the trial court was ready to permit. It does appear, however, that upon the beginning of the impanelment of the jury, and, also, upon the beginning taking of testimony, the defendants O'Connor and Fitzgibbons, jointly charged, objected to any proceedings being taken and had concerning the trial of Brock upon the information upon which he alone was charged, and likewise that the defendant Brock made the same objections.

**[2]** The rule relating to the number of challenges to which defendants may be entitled when jointly tried, in the absence of a statute relating thereto, is thus stated in 35 C. J., section 472, page 412: ''The general rule, in the absence of statute, is that, where several defendants are jointly tried, each may challenge peremptorily the full number of jurors to which he would be entitled if tried alone,'' and decisions supporting this statement of the law are there cited and are too numerous to be set forth herein. The common-law rule relating to the right of said challenges, in the absence of a statute providing therefor, is thus stated by Justice Story, in *United States* v. *Marchant,* 12 Wheat. (U. S.) 480 [6 L. Ed. 700, see, also, Rose's U. S. Notes], reported in the note to *People* v. *Caruso,* 170 Mich. 137 [135 N. E. 968], and as reported in Ann. Cas. 1914A, page 860: '' 'Upon a joint trial, each prisoner may challenge his full number and every juror challenged as to one is withdrawn from the panel as to all the prisoners on the trial. . . . This is the rule clearly laid down by Lord Coke, Lord Hale and Sergeant Hawkins, and, indeed, by all the elementary writers.' The right of each joint defendant to the full number of peremptory challenges allowed to a defendant tried alone has been sustained in every case decided under the common law or under a statute not plainly indicating an intent to establish a different rule.'' See the cases cited on page 860, Ann. Cas. 1914A.

From what has been said, the conclusion necessarily follows that the defendants were compelled to submit to a trial against which they had a legal right to object and against which they did object and, therefore, that the jury was not impaneled in this case as provided by law and the trial court was not authorized to proceed with the trial with the jury in the impanelment of which the rights of the defendants were not allowed to be exercised. Meeting these objections as to the want of authority to order a joint trial herein and on the limiting of the challenges by the defendants, it is argued that section 4½ of article VI of the constitution is applicable, wherein it provides that ''no judgment shall be set aside, or new trial granted, . . . for any error as to any matter of pleading, or for any error as to any matter of procedure, unless, from an examination of the entire cause, including the evidence, the court may

be of the opinion that the error complained of, has resulted in a miscarriage of justice." [3] As generally defined "procedure" includes in its meaning whatever is embraced by the three technical terms, pleading, evidence, and practice. (32 Cyc. 405.) Had there been no denial of the exercise of any peremptory challenges, we seriously question whether this section has any application to the cause before us. [4] This section must refer to pleading and procedure, as authorized by the codes. Thus, to make it applicable to the pleadings, had there been any defects in the informations not affecting the substantial rights of the parties, as accorded by law, then, and in that case, the error should be held harmless. Likewise, if the court omitted to follow the procedure embodied by the codes for the arraignment and trial of the defendants upon the informations filed against them and had committed some error in so doing, which did not affect the substantial rights of the parties, then such error in procedure would likewise be held harmless, but, it cannot reasonably be held that section 4½ of article VI is so broad in its meaning as to permit the trial court to disregard the usual and ordinary procedure in the trial of a cause and adopt a new and entirely different manner from that recognized by law. Such a course is not a mistake in procedure; it is a substitution of procedure. What would excuse a mistake in procedure would not and could not be held to allow the creation of a course unprovided for by law. Mistake is one thing; a substitution is an entirely different thing. [5] As we have said, the defendants were deprived of the right of trial by jury, as it should have been constituted by law, in that they were compelled to go to trial before jurors whom they were entitled to reject, which brings it in principle on a parallel basis with decisions of courts relative to the right of trial by jury. In *Farrell* v. *City of Ontario*, 39 Cal. App. 351 [178 Pac. 740], the court speaking through Justice Myers, touching this right, said: "The right of trial by jury thus guaranteed was the right as it existed at common law. (*Koppikus* v. *State Capital Commrs.*, 16 Cal. 248, 253; *Cauhape* v. *Security Savings Bank*, 127 Cal. 197, 202 [59 Pac. 589].) The purpose of the amendment of 1874 to section 592 of the Code of Civil Procedure was to make it conform thereto. (*Vallejo & N. R. Co.* v. *Reed Orchard*

*Co.*, 169 Cal. 545, 556 [147 Pac. 238].) It follows, therefore, that the common-law rule respecting the right to trial by jury as it existed in 1850 is the rule of decision in this state. (Pol. Code, sec. 4468; *Martin* v. *Superior Court*, 176 Cal. 289 [L. R. A. 1918B, 313, 168 Pac. 135, 136].)" And, further along in said opinion, the court said: "Respondent urges that the decision of the court, as embodied in the findings and conclusions drawn by it, is a just one under the evidence, and that, therefore, its reversal is precluded by section 4½, article VI, of the constitution. It may be doubted that this section applies to a situation such as is here presented; but assuming that it does, we do not hesitate to hold that the denial of the right of trial by jury to a party entitled thereto is, in itself, a miscarriage of justice." See, also, 15 Cal. Jur. 328, section 7. In passing upon the questions here being considered, this court in the case of *People* v. *Wismer*, 58 Cal. App. 679 [209 Pac. 259], has held that the "right of trial by jury is fundamental, a right which came to us from the common law and as such guaranteed by the Constitution—and inseparably connected therewith is the right to a trial by a jury consisting of unbiased and unprejudiced persons." In that case the trial court had denied a challenge for cause, which should have been allowed and it was held that where a defendant in a criminal action, notwithstanding he has exercised all his peremptory challenges, is compelled to accept a juror, who is disqualified by reason of actual bias, section 4½ of article VI of the state constitution has no application. In other words, to give the section of the constitution application, the juror impaneled must be such a juror against whom the defendant has no legal objection and against whom he is not deprived of exercising any legal objection or right accorded him by law. Again, in the case of *People* v. *Carmichael*, 198 Cal. 534 [246 Pac. 62], the supreme court, quoting from *People* v. *Wismer, supra,* followed the ruling had in that case and reaffirmed the statement that section 4½ of article VI cannot be relied upon to prevent reversal where the defendant has been deprived of a fundamental right in the impanelment of a jury.

The evidence in this case disclosed that five persons were engaged in the commission of the offenses charged; that after the commission of the offenses the defendants escaped

in an automobile which was wrecked a few miles distant from the commission of the offense, one of the occupants killed and the others so seriously injured as to render escape impossible. It is argued upon this appeal that the testimony is insufficient to warrant the conviction of the defendant Brock. However, from what we have said, it is unnecessary to go into a consideration of the testimony further than to call attention to one matter, lest error might be committed upon a subsequent trial hereof. The People were allowed to introduce testimony of the clerk of the court and of an officer showing the information against the defendant Franks, his arraignment, plea of guilty, sentence to the penitentiary and, also, statements that were made by Franks to the officer, relative to the number of persons engaged in the commission of the offenses. This testimony appears to have been stricken out by the court, for the reason that one of the Lillards, who recognized Franks during the robbery, was not in court at the time that Franks pleaded guilty and was sentenced and, therefore, could not say that it was the same person. [6] Lest this alleged defect in the testimony be supplied upon a subsequent trial and the testimony to which we have referred be again admitted, we deem it necessary to state that no testimony in reference to the information filed against Franks, his plea of guilty, his sentence thereon, and what he might have said to the officers in the absence of other defendants is admissible, whether the alleged missing link were supplied that the Franks, who was recognized at the robbery was identified as the same Franks who pleaded guilty. As the alleged defects in the instructions will not occur upon trials separately had upon the informations presented against the respective defendants, we deem it unnecessary to consider the objections thereto further than to state that instruction No. 28, while harmless, is not a full and complete statement of the law and should be omitted or redrafted. The orders and judgments appealed from are reversed and new trials ordered of the defendants, O'Connor and Fitzgibbons, upon the information jointly charging them with the commission of the offenses therein stated, separately from a trial against the defendant Brock on the information filed against him, and, likewise, a trial of the defendant Brock, separately from the trial of Fitzgibbons and O'Connor.

Finch, P. J., and Hart, J., concurred.