[Crim. No. 1004. Third Appellate District.—December 15, 1927.]

THE PEOPLE, Respondent, v. EDWARD BROCK, Appellant.

Arthur C. Huston, Jr., and Percy Napton for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

PLUMMER, J.—The defendant was tried and convicted upon an information charging, in one count, that on or about the twenty-eighth day of February, 1926, the said defendant did burglariously, etc., enter a certain dwelling-house belonging to and occupied by one W. A. Lillard, in the county of Yolo, state of California; and in a second count, charging that the defendant, at the same time and place and in the same residence, in the immediate presence of W. A. Lillard and others, did commit the crime of robbery, in that the said defendant did unlawfully, forcibly, etc., take from the person, possession, and immediate presence of the said W. A. Lillard and others, certain personal property consisting of lawful money of the United States, firearms and jewelry, all of the value of about one hundred dollars, lawful money of the United States. The information was sufficient in form and substance to charge the defendant with the crime of burglary and also with the crime of robbery. The defendant's motion for a new trial being denied, an appeal is prosecuted therefrom, and from the judgment of conviction entered upon the verdict of the jury. This is the second trial of the defendant upon the information referred to, both trials resulting in conviction. The first trial resulted in a reversal upon appeal because this defendant and other parties charged with the same offense in a separate and distinct information were tried at the same time. (See *People* v. *O'Connor*, 81 Cal. App. 506 [254 Pac. 630].) Upon reversal of the cause as just referred to, the *remittitur* therein went down from this court and was filed in the office of the clerk of the trial court in Yolo County on the second day of May, 1927. The trial which resulted in the second conviction of the defendant and on account of which

this appeal is prosecuted took place on the sixth day of July, 1927. Three principal reasons are urged as counts for reversal, to wit: First, that the defendant's motion to dismiss for want of prosecution within sixty days should have been granted; second, that the evidence did not warrant the conviction of the defendant; and third, that the court erred in the admission of testimony. Two minor reasons for reversal are also set forth: that the court erred in its instructions to the jury; and that the attorney for the People was guilty of prejudicial misconduct in his argument to the jury. ■ Section 13 of article I of the constitution of the state of California, guaranteeing to every defendant a speedy trial, and section 1382 of the Penal Code defining the time within which a trial must be had after the finding of an indictment or the filing of an information, are relied upon as necessitating a reversal of the judgment and the dismissal of the defendant. Section 1382 of the Penal Code, so far as involved herein, reads: "The court, unless good cause to the contrary is shown, must order the prosecution to be dismissed in the following cases: . . . , if a defendant whose trial has not been postponed upon his application is not brought to trial within sixty days after the finding of an indictment or filing of an information." In support of the ruling of the trial court denying the motion of the defendant for dismissal because the action was not tried within sixty days after the filing of the *remittitur,* it is urged by the People, first, that the section applies only as to the time within which a trial must be had after the finding of an indictment or the filing of an information, and has no relevancy to cases being brought to trial within sixty days after the going down of a *remittitur;* that the section, not referring to a trial where reversal has been had upon appeal by a defendant, and not mentioning the filing of a *remittitur* or the time within which a trial must be had after the filing of a *remittitur,* there should not be imported into the section language which the legislature has not incorporated therein; and, second, that good cause has been shown in this case for not bringing the defendant to trial within sixty days after the filing of a *remittitur.* Section 13 of article I of the constitution entitles the defendant to a speedy trial, and section 1382 of the Penal Code, in furtherance of the constitutional pro-

vision, explicitly provides for the time within which a trial is to be had after the finding of an indictment or the filing of an information. Section 1382 of the Penal Code, however, contains another provision which controls the application of subdivisions 1 and 2 of the section, and particularly subdivision 2, which is involved herein. If good cause for the delay is shown, sixty days is held not to be the limit of the period of time within which a speedy trial may be had. In other words, the term "speedy trial" is to be read and interpreted in the light of all the circumstances. In the case at bar, if good cause has been shown why the defendant was not brought to trial until the sixth day of July, 1927, which was five days after the expiration of the sixty-day period, then it becomes wholly immaterial whether section 1382 of the Penal Code refers only to indictments or informations, or whether the constitutional provision to which we have referred and the section of the code should be read together and the term sixty days accepted as the limit of the period within which a defendant may be brought to trial after the *remittitur* has been filed in the event of a reversal of the cause upon appeal. With this in view, we have carefully examined the transcript in this case and find that it discloses the following: Upon the first trial of this cause, wherein the defendant was tried with others and charged with the same offense, one Neal Chalmers appeared as one of the attorneys for this defendant and the other defendants tried with him in the trial just referred to and conducted the defense in the trial court and successfully prosecuted the defendant's appeal in this court. The trial just referred to was had on or about the second day of June, 1926. Later, in the year 1926, to wit, at the general election held in November, 1926, the said Neal Chalmers was elected district attorney of the county of Yolo and assumed his duties as such on or about the first Monday of January, 1927, and therefore was disqualified to act as the prosecuting officer in this case during the entire period of time from the second day of May, 1927, to and including the sixth day of July, 1927. That after the going down and filing of the *remittitur* in this cause, the said Neal Chalmers communicated with Honorable U. S. Webb, the attorney-general of the state, setting forth his disqualification by reason of

his having been counsel for the defendant upon his first trial and asking that some other counsel be designated by him according to the provisions of section 472 of the Political Code. Several letters passed between the attorney-general and Mr. Chalmers relative to the latter's disqualification, and this was followed by inquiry as to some suitable attorney, member of the bar of Yolo County, whose services might be obtained to act as special counsel for the People by reason of the disqualification of the district attorney of said county. After some inquiry and correspondence, the attorney-general secured the services of Arthur B. Eddy, an attorney at law and member of the bar of the county of Yolo and a resident of Woodland, in that county, to act as special prosecutor and represent the People in this cause. It appears that one of the letters addressed by the attorney-general to Mr. Arthur B. Eddy at his office in Woodland remained unanswered for the period of about eight days, due to the fact that Mr. Eddy was away from his office and the city of Woodland during that period of time. After Mr. Eddy had received the request from the attorney-general that he act as special counsel in this case, Mr. Eddy took a few days within which to inquire into the case and acquaint himself somewhat with the duties to be performed in order to properly represent the People therein. After making such investigation, Mr. Eddy accepted the appointment as special counsel to represent the People in this cause, and took upon himself such duties. The record likewise shows that the Honorable W. A. Anderson, the duly qualified and acting judge of the superior court of Yolo County, was, by order of the chief justice of the state of California and chairman of the judicial council of the state of California, designated and appointed to preside in the superior court of the counties of San Diego and Los Angeles in one of the departments thereof, from the period of time beginning on the third day of May, 1927, to and including the eighteenth day of June, 1927. Thus, during said period of time the trial judge of said county and the one elected to preside in the superior court of said county was necessarily absent therefrom for a period of at least forty-eight days, assuming that it required one day to reach Los Angeles from the city of Woodland, and one day to return therefrom, which probably

is somewhat less than the actual time required. The record also shows that Honorable Ernest Weyand, judge of the superior court of the county of Colusa, was, by the same authority, designated and appointed to hold court in the county of Yolo from the ninth day of May to and including the eleventh day of June, 1927. The record further shows that for a short period of time, to wit, on May 23, 1927, the Honorable Malcolm Glenn, a judge of the superior court of Sacramento County, was designated and appointed to hold court in the county of Yolo. The record likewise shows that the Honorable W. A. Anderson was, by the same authority, designated and required to hold court in the superior court of the county of Sacramento for the period beginning on the twenty-eighth day of June and ending on the thirtieth day of June, 1927. The time which the Honorable W. A. Anderson was required to hold court in the county of Los Angeles was set forth and prescribed in several orders which we have considered and given as including the whole time. The record further shows that the former district attorney of Yolo County, Mr. Kern, who appeared as prosecutor upon the first trial of the defendant, declined the request of the attorney-general to appear and prosecute this action as special counsel. The record further shows that it was not until the twenty-eighth day of June, 1927, that Arthur B. Eddy finished his investigation of the facts and circumstances connected with this action and accepted the appointment from the attorney-general as special counsel to appear in behalf of the People upon the trial of this cause. It thus appears that within eight days after the People, through the attorney-general of the state, had secured qualified counsel to represent them in this action that the trial of this defendant was begun. An examination of the record in this cause discloses that some eighty-eight pages of the transcript are required simply to schedule the various court proceedings which were had in the county of Yolo between the second day of May, 1927, and the sixth day of July, 1927. A cursory calculation leads to the conclusion that there were between 340 and 350 different proceedings, including motions, demurrers, probate proceedings, naturalization hearings, and trials. This record shows that the judges who came from the counties of Colusa and Sacramento to preside in the superior

court of Yolo County were reasonably busy during said period of time, and this conclusion is further strengthened by the fact that the judges referred to had their own duties to perform in their local courts. The record shows that there were several days intervening between some of the proceedings conducted by the Honorable Ernest Weyand sitting as judge of the trial court in the county of Yolo, but at the same time it is made clear that the People had no one to represent them in this action until the twenty-eighth day of June, 1927, which was after Judge Weyand had ceased to act as presiding judge of the superior court of Yolo County. The record shows that the defendant, when this action was called and set for trial for July 6, 1927, interposed an objection thereto on the ground that it was being set at a period more than sixty days after the filing of the *remittitur* herein, and upon defendant's motion to dismiss, which was heard on the sixth day of July, 1927, all of the facts which we have hereinbefore set forth were submitted to the trial court for it to determine whether good cause was or was not shown for not bringing the defendant to trial until five days after the expiration of the sixty-day period. Under these circumstances, as stated in the case of *People* v. *Farrington,* 140 Cal. 656 [74 Pac. 288], the trial court was called upon to exercise its discretion as to whether good cause had or had not been shown for the delay of five days after the sixty-day period had expired, in bringing the defendant to trial, and as stated in the case just cited, some discretion must be given to the trial court in its decision relative to the motion to dismiss. This discretion, however, cannot be exercised arbitrarily, but is to be based upon all the circumstances and facts presented to the court to account for the few days' delay. In the case of *Murphy* v. *Superior Court,* 53 Cal. App. 6 [200 Pac. 483], it was held that a defendant is not entitled to have a criminal action dismissed on the ground that he was not brought to trial within sixty days after the finding of an indictment, where the court was engaged practically all of such sixty-day period in the trial of other cases. In that case, as here, the record disclosed the number of proceedings in the superior court during the sixty-day period, and established the fact that the court was engaged during practically all of such period.

Likewise, in the case of *People* v. *Benc,* 130 Cal. 159 [62 Pac. 404], it is held that good cause is shown where it appears that the court was engaged in the trial of other cases. In 8 Cal. Jur., page 204, section 278, we find the following, which we think a correct statement of the rule that should be applied: "What is good cause for delay, within the meaning of section 1382 of the Penal Code, may be difficult to define with precision, since it must, in a great measure, be determined by reference to the particular circumstances appearing in each case. The matter rests largely in the discretion of the trial court. However, this discretion is not arbitrary but should proceed upon such knowledge or information as will enable the court to determine for itself whether public justice requires further detention of the prisoner, notwithstanding delay on the part of the prosecution." Examples are then given of what has been held to show good cause for the delay.

In the case at bar, under the recent constitutional amendment and the acts of the legislature passed in pursuance thereof, the chief justice of the supreme court, as chairman of the judicial council, is vested with a large discretion in directing trial judges to leave their own counties and proceed to some other county, and there hold court, where the calendars are more congested. The record in this case shows that the trial judge, under this constitutional provision, was taken from the county of Yolo and sent to the counties of San Diego and Los Angeles, there to hold court for such a period of time as to practically take him away from his own county and courtroom for the period of approximately fifty days during the sixty-day period immediately following the filing of the *remittitur* in this cause. That during said period of time trial judges were sent to the county of Yolo from adjoining counties for a limited period of time to attend to the routine business of the court that required immediate consideration, and the transcript shows that said judges not only attended to routine matters, but also tried several cases. The transcript further shows that there was no district attorney of the county of Yolo qualified to represent the People in the trial of the defendant in this action between the second day of May, 1927, and the sixth day of July, 1927. That it was necessary for the attorney-general to secure the services

of some attorney at law, sufficiently able and willing to undertake the prosecution of this action. That such attorney was not secured until on or about the twenty-eighth day of June, 1927. The record further shows that a delay of only five days occurred after the expiration of the sixty-day period before the trial of this defendant was begun. In view of all of these facts, if good cause is not shown for the delay, we do not really see how those words in the statute would ever find application. And in view of the fact that it has been found necessary for the chairman of the judicial council of this state to direct judges of smaller counties to go to larger counties and there assist in the clearing of the court calendars, it would be unreasonable to hold that if, in so doing, a delay of five days has been occasioned over the sixty-day period, necessitates the discharge of a defendant in a criminal action. Especially would this be true in view of all the circumstances disclosed by the record in this cause. We think that the circumstances of this case disclose that an appellate court should not hold that the discretion of the trial court in denying the defendant's motion to dismiss has been either improperly or arbitrarily exercised.

That there is little merit in the defendant's contention that there was insufficient testimony to warrant conviction will appear from a brief recital of the facts set forth in the record. It appears in the evidence that on the twenty-eighth day of February, 1926, five men were seen in and about the dwelling-house occupied by W. A. Lillard in the county of Yolo. The residence of W. A. Lillard is situate on what is known as the Davis highway in said county. At about midnight on the twenty-eighth day of February, 1926, according to the testimony of one witness, four men entered the residence of said Lillard and proceeded to ransack the house. Another witness who was in a different room in said residence saw only three in the house. Of the three, one wore a mask or bandage over his face. The other two had no covering over their faces. These two were observed and identified by two witnesses. There were at the time in the Lillard house, and as a part of the Lillard family, W. A. Lillard, Mrs. Laura E. Lillard, and Tom Lillard. The men who entered the Lillard house were armed and the Lillards were com-

manded to keep quiet. The record sets forth fully how the Lillards were intimidated by the threatening attitude of the armed men, which need not be set forth herein, further than to say that the men secured a number of articles such as money, jewelry, revolvers, pearl beads, and the like from the Lillard home. While the robbery was being perpetrated a man by the name of J. A. Nunes, an employee of the Lillards, and who resided in a small house on the Lillard ranch not far from the Lillard residence, had returned by automobile from Capay Valley. The testimony of Nunes is to the effect that he returned to the Lillard ranch shortly before 12 o'clock; that as he turned off the highway toward the house which he occupied on the Lillard ranch, he noticed a "Hudson" open car standing alongside the Davis highway, which we have heretofore mentioned (which, by the way, is an improved state highway), and that at that time one man was sitting behind the steering-wheel of the automobile, parked, as just stated, and a second man was walking around or standing in front of the automobile. That on his way to the Lillard ranch he passed this automobile, and as he passed the parked "Hudson" automobile the persons referred to were in the positions which we have just stated. Mr. Nunes testified further that after he had put his car in the garage he noticed a light in the Lillard residence; that just after he had gone into his own house to go to bed he was called by Tom Lillard; that he got up and went to the Lillard house, and there he found that the premises had been robbed; that the Lillards had been tied up, etc. The record further shows that immediately after the robbery the persons engaged therein drove away from the Lillard residence on the Davis highway in a westerly direction; that at a place about three and one-half miles from the Lillard residence the "Hudson" automobile was overturned and five persons who had been riding therein were discovered a few minutes thereafter, one of whom was dead, killed by the overturning of the "Hudson" automobile, and the others more or less injured; that the defendant Brock was seriously injured. One of the persons engaged in the robbery, named John Franks, pleaded guilty; three of the persons alleged to have been engaged in the robbery, to wit, Herbert Fitzgibbons, James O'Connor, and this defendant, Edward

Brock, were tried and found guilty, as heretofore stated, and secured a reversal upon appeal to this court. The record shows that many of the articles taken from the Lillard home were found scattered about the wrecked automobile. The watch taken from the Lillard home was found on the person of the man who was killed. The pearl beads were taken off the person of the defendant Brock. The testimony in this particular shows that the defendant Brock, who was seriously wounded, was taken to the Woodland Sanitarium, and the testimony as to the pearl beads is as follows: "Q. Here are some pearl beads; do you know anything about these? A. Yes, those were taken off Mr. Brock in the sanitarium at the Woodland Sanitarium— out of his pocket." The testimony of the witness Howard is to the effect that at about 12:30 o'clock on the night of February 28, 1927, he was driving along the Davis highway, and at a turn therein, about three and one-half miles from the Lillard home, he discovered the wrecked automobile and the wounded man to whom we have just referred. That the automobile was turned over; was bottom-side up; that the lights were still burning; that he noticed a number of persons there, and that the defendant Brock was pinned under the car under the back seat; that he assisted in taking the wounded men to a place where they could be cared for. The record further discloses that the defendant Brock stated to the witness Grove and other persons that he was riding in the back seat of the automobile. As before stated, the testimony shows that among the articles taken from the Lillard home was a string of pearl beads. This recital may be summarized as follows: Three men entered one room of the Lillard residence. According to another witness four men entered another room. Two of the men referred to were identified while they were in the Lillard house. Two men were seen at the "Hudson" automobile, one sitting behind the wheel, the other in front of the machine. We know by common experience that such persons are called "lookouts." The robbery occurred a few minutes after 12 o'clock; at 12:30 that same night the automobile in which the five men were riding was found wrecked three and one-half miles from the Lillard residence, the defendant, one of the number, stating that he had been riding with other of the defendants, whom he named, in the rear

seat of the automobile; that after the defendant was taken to the sanitarium a string of pearl beads, like those taken from the Lillard home, was found in his pockets. It also appears from the record that the defendant stated he was willing to plead guilty of burglary but not of robbery. With these facts in the record we do not see how it can be seriously contended that there was not sufficient evidence to submit this cause to the jury and warrant the jury finding the defendant guilty as charged. It is true that no one identified the defendant Brock at the Lillard residence, that no one saw him enter the residence, nor does it appear that the witness Nunes identified the two persons whom he saw with the "Hudson" automobile, but the circumstances and admissions which we have set forth lead inevitably to the conclusion that the defendant was one of the five persons engaged in the robbery.

The objection to the admission of the testimony relating to the robbery, the articles taken from the Lillard home, the articles found at the scene of the wrecked car, and where the different articles were found, is so utterly without merit that we will take no time in the discussion thereof further than to say that the finding of the wrecked automobile, the parties who were riding therein and the taking from the persons of the different defendants, including the pearls taken from the person of the defendant, all tended to show who were engaged in the perpetration of the robbery.

█ It is further objected that the court erred in admitting testimony to the effect that the defendant stated to Dr. Stanley and the witness Grove that he would plead guilty to the crime of burglary, but not to robbery. This statement of the defendant appears to have been made in response to a statement made to him by Dr. Stanley, and also by the witness Grove, that if he would come through and plead guilty and go to San Quentin, he would receive better medical care than they were able to give him at the Woodland Sanitarium. It does not appear that any promise was made to the defendant, or that any hope of a lighter penalty would be imposed by reason of anything which was said to him by either Dr. Stanley or the witness Grove, and nothing that the defendant said could be held to be a confession. But whether the court erred in this

particular or not, we think that under the facts which we have set forth, no prejudicial error was committed, and that section 4½ of article VI of the constitution applies.

■ The alleged misconduct of the special prosecutor for the People refers to what was said by counsel during the argument of the cause to the jury. In setting forth all the facts and circumstances pertaining to the case, counsel stated frequently that such facts were undenied. The point is made that as the defendant did not take the witness-stand or make any denial, such argument came within the prohibition of the statute where it is provided that the fact that a defendant does not take the witness-stand shall not be considered as a circumstance against him. However, there is no merit in this objection. See 8 Cal. Jur., page 269, section 330, where it is said: "It is not improper, however, for a district attorney to state that certain evidence of the prosecution is uncontradicted, or to point out that incriminating circumstances have not been explained by any sworn testimony." This is not commenting upon the failure of the defendant to take the witness-stand, but a simple statement of the fact that the evidence against the defendant stands uncontradicted by any testimony. The text above quoted is amply supported. We do not need to cite authorities that a conspiracy to commit a crime may be established by proofs of acts and conduct; that it was not necessary to show an express agreement between the parties; that if all the facts and circumstances taken together show that certain persons took part in the carrying out or perpetration of any crime, such as acting as lookouts, standing guard at an automobile, or sitting in an automobile ready to drive away at a moment's notice, while other persons enter a near-by residence and there perpetrate the robbery; that all the persons thereafter make their escape from the scene of the robbery and are found a few minutes later in the wrecked car, including all the circumstances which we have detailed in this opinion, the conclusion that all the persons referred to were conspirators is unescapable. No other testimony is needed.

■ It is finally urged that the court erred in instructing the jury in relation to the inferences to be drawn from the unexplained possession of stolen property shortly after the time of the robbery. This objection is based upon the

erroneous allegation that none of the stolen property was found upon the person of the defendant Brock. The incident of the pearl beads appears to have been entirely forgotten. The instructions on the subject of possession of stolen property given by the court are but a repetition of instructions which have been approved times without number, and do not need to be set forth herein.

■ The objection that the venue was not proven is likewise without merit. The testimony of the witness W. H. Lillard is to the effect that on the twenty-eighth day of February, 1926, he was living at what is known as the Lillard residence; that he resided in Yolo County; that the residence was in Yolo County between Davis and Winters. The testimony of Thomas W. Lillard is to the same effect. The residence referred to was then described as the residence robbed on the night of February 28, 1926, as hereinbefore set forth in this opinion. That this sufficiently shows the venue, we need only cite one case, *People* v. *McGregar,* 88 Cal. 144 [26 Pac. 97].

The verdict of the jury and the judgment of the court in this case being just, and we think amply supported by the law and the evidence, the order and judgment of the trial court are affirmed.

Hart, J., and Finch, P. J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on January 14, 1928, and the following opinion then rendered thereon:

THE COURT.—Appellant, upon petition for rehearing, calls attention to a stipulation by counsel purporting to correct the official record in this case, certified to by the trial court as being correct. The stipulation of counsel is to the effect that the witness Grove, called for the prosecution, actually testified that a certain string of pearl beads was taken from the clothing of one of the defendants accused of participation in the Lillard robbery, named Franks, whereas the record certified to by the trial court makes this witness testify that the beads were taken off of the person of the defendant Brock, and bases his petition for a rehearing thereon. While this manner of correcting a record does not appear to be provided for in

any of the codes, we will, nevertheless, accept the stipulation as showing the true facts, and for that purpose—

It is hereby ordered that that portion of the testimony in the opinion which, as filed, reads as follows:

"The pearl beads were taken off the person of the defendant Brock. The testimony in this particular shows that the defendant Brock, who was seriously wounded, was taken to the Woodland Sanitarium, and the testimony as to the pearl beads is as follows: 'Q. Here are some pearl beads; do you know anything about these? A. Yes, those beads were taken off Mr. Brock in the Sanitarium, at the Woodland Sanitarium—out of his pocket' ''—be corrected to read as follows:

"The pearl beads were taken off of the person of the defendant Franks. The testimony in this particular shows that the defendant Franks, as well as the defendant Brock, were taken to the Woodland Sanitarium, and there the pearl beads were found, the testimony being as follows: Q. Here are some pearl beads; do you know anything about these? A. Yes, those were taken off Mr. Franks in the Sanitarium, at the Woodland Sanitarium—out of his pocket.''

It is also further ordered that that portion of the opinion reading as follows:

"This objection is based upon the erroneous allegation that none of the stolen property was found upon the person of the defendant Brock. The incident of the pearl beads appears to have been entirely forgotten,'' be corrected to read as follows:

"This objection is based upon the allegation that none of the stolen property was found upon the person of the defendant Brock. That the evidence which we have referred to shows concerted action and proper to be submitted to the jury, establishing conspiracy, and hence, that the possession of one would be the possession of all, is overlooked.''

The ruling of this court in the case of *People* v. *Haack,* 86 Cal. App. 390 [260 Pac. 913], on an instruction relative to the recent possession of stolen property, is also relied upon by the petitioner herein. A comparison of the instruction condemned in the Haack case with the instruction given by the court in this case shows that the instructions are readily distinguishable. The syllabus in the

Haack case does not fully show the vice of the instruction referred to, and has probably misled counsel in citing the Haack case in support of appellant's contentions.

After a careful review of this case, we do not find that the error in the transcript nor the corrections made by stipulation and here accepted for the purposes of this opinion, affect in any way the substantial rights of the parties to this cause. We think the evidence shows beyond any reasonable doubt whatever that the defendant was one of the participants in the robbery and that he was properly convicted.

The petition for rehearing is denied.