## THE STATE v. JOHN HARDELEIN, Appellant.

### Division Two, October 27, 1902.

1. **Criminal Law:** PRIMA FACIE CASE: PRESUMPTION OF INNOCENCE. A prima facie case under our statute means a state of facts which entitles the State to have the case go to the jury. Where a defendant pleads not guilty and admits nothing against himself, the burden of proof is on the State to first make out a case against him which would entitle it to go to the jury, but this does not change the burden of proof, which remains with the State throughout the trial. Whether or not the prima facie case is sufficient to overcome the presumption of defendant's innocence and to establish his guilt beyond a reasonable doubt, when all the evidence on both sides, including the presumptions, is considered, is still for the determination of the jury.

2. **Impersonating A Voter:** INSTRUCTION. It is error for the court, in submitting to the jury the question of whether or not the person whom the defendant is charged with having personated was an "elector," not to advise the jury what the word "elector" means as used in the Constitution and statute.

3. ————: VALID AND INVALID STATUTE ON SAME SUBJECT: PUNISHMENT. It is unnecessary to decide whether or not a statute is unconstitutional as inflicting a different or greater punishment for impersonating an elector in the city of St. Louis than is inflicted in any other part of the State, if the conviction can be sustained under another valid statute applicable to the whole State.

Appeal from St. Louis City Circuit Court.—*Hon. H. D. Wood,* Judge.

REVERSED AND REMANDED.

*T. J. Rowe* for appellant.

(1) The State failed to introduce evidence sufficient to prove that Wilhelm Mueller was an elector. The State proved

that William Mueller was a native of Germany, and consequently that he was not an elector.    Art. 8, sec. 2, Constitution; sec. 7232, R. S. 1899; State v. Dan Shelly, 66 S. W. 430.    (2) The instructions given by the court do not cover all the law of the case, in this, the court failed to define the technical word "elector," and failed in its instructions to tell the jury what constituted an attempt to vote.    (3) The proof made by the State is that defendant did not attempt to vote in the name of Wilhelm Mueller, but that he did vote in the name of William Miller.    (4) The second instruction given by the court is clearly erroneous.    The court, by this instruction, told the jury, in effect, that if defendant said that his name was Wilhelm Mueller and that if an attentive ear would have difficulty in distinguishing William Miller from Wilhelm Mueller when pronounced, or vice versa, then in law Wilhelm Mueller is considered William Miller, and vice versa.    In other words, if the defendant personated William Miller, and if an attentive ear would have difficulty in distinguishing William Miller from Wilhelm Mueller when pronounced, then the defendant must have personated Wilhelm Mueller.    (5) Section 7261, Revised Statutes 1899, is special legislation, in violation of sections 53 and 54 of article 9 of the Missouri Constitution.    The law is a special one, because it inflicts a different and a greater punishment for impersonating an elector in the city of St. Louis than is inflicted in any other part of the State.    Sec. 7178, R. S. 1899; sec. 7335, R. S. 1899; State v. Walsh, 136 Mo. 400; State v. Thomas, 138 Mo. 95.

*Edward C. Crow,* Attorney-General, for the State.

(1) The defendant contends that the word "elector," as used in section 7261, Revised Statutes 1899, is the same as defined in section 2, article 8 of the Constitution of Missouri. Bouvier's Law Dictionary and Worcester's Dictionary define

"elector" as one who has a right to make a choice of public officers; one who has a right to vote. The word "elector," as used in the statute, is not intended to have the purely technical meaning that it has in the Constitution. The word "elector," as used in the statute, means a qualified voter, and there is no doubt that the Legislature in framing the law intended it to mean such. It is true, the Constitution may fix the qualifications of voters, but it is in the power of the Legislature to provide the machinery for ascertaining whether or not the particular voter possesses the requisite qualifications, and to this end the Legislature has power to prescribe the form and manner of the proof by which judges and clerks of election may know whether or not persons are qualified voters. Cusick's Contested Election, 136 Pa. St. 459. The word "elector," as used in the statute, is intended to be used in the same sense as defined in the case of Deberry v. Nicholson, 102 N. C. 466. (2) I do not concede that the act is special because it inflicts a different and greater punishment for impersonating an elector in the city of St. Louis than is inflicted in any other part of the State. State ex inf. v. Ins. Co., 150 Mo. 136; State v. Thompson, 160 Mo. 333. Even though it should be held that section 7261 is in violation of the Constitution, the same can be stricken from the act and a complete election law remain because of the fact that other provisions of the statute punish the offense of impersonating an elector. Secs. 2116, 2115, R. S. 1899. (3) Mueller testified that the signature in the book of registration of voters was his and that he lived at 1618 South Broadway and that he registered at 1614 South Broadway; that he was born in Germany and that he was twenty-five years old and came to this country when he was fourteen. Even if it is true that the fact that he was registered is not prima facie evidence that he was a voter, yet on the other hand, the fact that he was born in Germany does not raise a conclusive presumption that he was a citizen of Germany, and taking his testimony

that he had been in this country eleven years and came here when he was fourteen years old, with the further fact that he was registered as a voter, discloses sufficient facts to establish, in the absence of any direct evidence to the contrary, that he was an elector. If the record showed clearly that Mueller's father had been naturalized, no question could be raised as to whether or not he was entitled to vote under the Act of April 14, 1802, entitled "the Act to establish an uniform rule of naturalization" (2 U. S. Statutes, 164), which statute is construed in the case of State ex rel. v. Andriano, 92 Mo. 75. (4) If the defendant's contention is correct that section 7261 and section 7335 are each unconstitutional, then I suggest that section 7178 makes it a felony punishable by imprisonment in the penitentiary for a term of years not less than two or more than five, for any person at any election held pursuant to the laws of this State to apply for a ballot in the name of some other person whether that name be of a person living or dead or a fictitious person.

BURGESS, J.—The defendant was convicted in the circuit court of the city of St. Louis, and his punishment fixed at two years imprisonment in the penitentiary under an indictment charging him with having feloniously, falsely and fraudulently personated Wilhelm Mueller, an elector, and feloniously and fraudulently attempting to vote in and on the name of Wilhelm Mueller, an elector, at the election held on April 2, 1901, in said city, for certain municipal officers of said city.

Wilhelm Mueller was born in Germany and came to this country when he was eleven years of age. He registered from No. 1618 South Broadway, in the Fourth precinct of the Seventh ward of the city of St. Louis. Defendant, on April 2, 1901, did not live at 1618 South Broadway, St. Louis.

On April 2, 1901, defendant went to the polling place, No. 1614 South Broadway, in the Fourth precinct of the

Seventh ward of the city of St. Louis, Missouri, told the judges and clerks of election that his name was William Mueller, and that he resided at No. 1618 South Broadway, and received from one of the judges an official ballot, and went into one of the booths in the polling place, prepared his ballot, and handed it to one of the judges of election. His right to vote was questioned by one of the clerks of election, and he was requested to write his name, and he wrote it "William Miller" and he said he was born in St. Louis.

The court gave the following instructions:

"By the indictment in this case, which was filed May 23, 1901, the defendant, John Hardelein, is charged with falsely personating the name of an elector, and fraudulently attempting to vote in the name of such elector, at an election held in the city of St. Louis, Missouri, for certain municipal officers, on the second day of April 1901. He pleads not guilty, and upon the question of his guilt or innocence the court instructs you as follows:

"1.   By the statutes of this State any person who shall falsely personate an elector and attempt or offer to vote in and upon the name of such elector is guilty of an offense against the election laws of this State.   Therefore, if you find and believe from the evidence in this case that at a general election, held in the city of St. Louis, Missouri, on April 2, 1901, for certain municipal officers of said city, one Wilhelm Mueller was then and there a duly registered voter and elector at the Fourth precinct of the Seventh ward of said city, and that then and there, on said second day of April, 1901, at the city of St. Louis, Missouri, the defendant, John Hardelien, did appear at the polling precinct aforesaid, before the duly selected and qualified judges and clerks of election within and for said election precinct and ward, and knowing himself not to be the said Wilhelm Mueller, did then and there falsely and fraudulently impersonate the said Wilhelm Mueller, and did then and there falsely and fraudulently attempt to vote in

and upon the name of said Wilhelm Mueller, then you will find
the defendant guilty as charged in the indictment, and assess
his punishment at imprisonment in the penitentiary for any
number of years, not less than two or for life.

"2.  If the jury believe, from the evidence, that the
name Wilhelm Mueller means in English William Miller;
or, if you believe, from the evidence, that an attentive ear
would find difficulty in distinguishing them when pronounced,
then, in law, said names are considered the same."

The court gave four other instructions: on the presump-
tion of innocence, credibility of witnesses, the indictment as
no evidence, and the purpose of the argument of counsel.

The jury found the defendant guilty, and assessed his
punishment at two years in the penitentiary.  In due time
he filed his motions in arrest and for a new trial, which,
being overruled, he appealed to this court.

The indictment was drawn under section 7261, Revised
Statutes 1899, which reads as follows:  "Any person who
shall falsely personate an elector, or other person, and vote,
or attempt or offer to vote in or upon the name of such elector
or other person; or shall vote, or attempt to vote, in or
upon the name of any other person, living or dead,  .  .  .
shall, upon conviction, be guilty of a felony, and punished
for every such offense by imprisonment in the penitentiary
not less than two years."

Section 2, article 8, of the Constitution of this State,
and section 7232, Revised Statutes 1899, provide that every
male citizen of the United States, and every male person of
foreign birth who may have declared his intention to become
a citizen of the United States according to law not less than
one year nor more than five years before he offers to vote,
who is over the age of twenty-one years,  .  .  .   shall be
entitled to vote."

It is said that the State failed to prove that Wilhelm
Mueller was an elector, in that he was of foreign birth, and

it was not shown that he had ever declared his intention to become a citizen of the United States according to law, not less than one year nor more than five years before the election at which defendant was charged with having personated one Wilhelm Miller, an elector, and in attempting to vote in and upon his name.

The evidence showed that Miller was a native of Germany, that he was twenty-five years of age at the time of the trial on June 7, 1901, and that he came to this county eleven years before that time.

The State introduced in evidence the register of voters for the ward in which Miller resided at the time, which shows, as we understand it, that William Miller resided at 1618 South Broadway, that he was a native of Germany, had resided in the city of St. Louis for ten years, that he was over twenty-one years of age and that he took out his naturalization papers in the circuit court of said city on August 31, 1890.

Aside from what appeared upon the registration book, Miller testified that he lived at 1618 South Broadway, at the time of his registration, and until about two weeks after the election. It was further shown by the State beyond any doubt that defendant fraudulently obtained a ballot, and in furtherance of a fraudulent purpose attempted to vote in and upon the registration number of and as Wilhelm Mueller, or Miller, as pronounced in German.

The evidence, we think, made out a prima facie case against defendant, or what under our practice means the same thing, that is, a state of facts which entitled the State to have the case go to the jury. Where a defendant pleads not guilty and admits nothing against himself, as in the case at bar, the burden of proof is on the State to first make out a case against him which would entitle it to go to the jury, but this does not change the burden of proof, which remains with the State throughout the trial, and whether or not the evidence is suffi-

cient to overcome the presumption of innocence of defendant, and to establish his guilt beyond a reasonable doubt, when all of the evidence on both sides including the presumptions, is considered, is for the consideration of the jury. [1 Bishop's New Criminal Procedure (4 Ed.), sec. 1050; State v. Darrah, 152 Mo. 522.]

In Commonwealth v. Kimball, 24 Pickering 366, it is said: "Making out a prima facie case does not necessarily or usually change the burden of proof. A prima facie case is that amount of evidence which would be sufficient to counterbalance the general presumption of innocence, and warrant a conviction, if not encountered and controlled by evidence tending to contradict it, and render it improbable, or to prove other facts inconsistent with it. But the establishment of a prima facie case does not take away from a defendant the presumption of innocence, though it may, in the opinion of a jury, be such as to rebut and control it; but that presumption remains, in aid of any other proofs offered by the defendant to rebut the prosecutor's prima facie case. The court are of opinion that the jury should have been instructed, that the burden of proof was upon the Commonwealth, to prove the guilt of the defendant; that he was to be presumed innocent, unless the whole evidence in the case satisfied them that he was guilty."

The State's first instruction is faulty in that it submitted to the jury a question of law, that is, whether or not Wilhelm Mueller was a duly registered "elector" within the meaning of the Constitution and the statute heretofore adverted to. While it was the duty of the court to advise the jury what was meant by that term, it failed to do so, and in so failing, committed error. [Laws 1901, p. 140.]

A final contention is that section 7261, Revised Statutes 1899, is special legislation in violation of sections 53 and 54 of article 9 of the State Constitution, because it inflicts a different and greater punishment for impersonating an

elector in the city of St. Louis than is inflicted in any other part of the State. Whether this position is well taken or not, is, we think, unnecessary to pass upon, for even if well taken, the conviction could well be sustained under section 7178, Revised Statutes 1899, by which the punishment for a similar offense committed anywhere in the State is fixed at not less than two nor more than five years' imprisonment in the penitentiary, and there can be no question with respect to its constitutionality.

The judgment is reversed and the cause remanded. All concur.