[Crim. No. 995. Third Appellate District.—October 27, 1927.]

THE PEOPLE, Respondent, v. CARL HAACK, Appellant.

Clinton Johnson for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

PLUMMER, J.—On the seventh day of May, 1927, an indictment was filed in the superior court of Butte County, containing four counts charging the defendant with the offense of grand larceny. The jury returned a verdict of

guilty upon counts 1, 2, and 3 contained in said indictment and a verdict of not guilty upon count 4.

Count 1 charges the defendant with the theft of two calves, the property of one Nettie Frishholz; count 2 charges the defendant with the theft of two calves, the property of William Cordoza, and count 3 charges the defendant with the theft of one calf, the property of John Bettincourt.

The defendant's motion for a new trial having been denied, this appeal is taken therefrom and from the judgment based upon the verdict of the jury finding him guilty in counts 1, 2, and 3.

This appeal presents for our consideration two major reasons why the judgment of the trial court should be reversed, to wit: First, that conviction was had upon the uncorroborated testimony of an accomplice; and, second, alleged error on the part of the trial court in instructing the jury on matters of law.

 A careful reading of the testimony set out in the transcript discloses that there is absolutely no corroborating testimony, as required by section 1111 of the Penal Code, in so far as counts 2 and 3 of the indictment are concerned, and no further comment need be made thereon.

As to count number 1 charging the defendant with the theft of the two calves belonging to Nettie Frishholz, the transcript presents a different state of facts. The corroborating testimony, which we think sufficient to send the case to the jury will be best understood by our first summarizing the testimony of the accomplice, Mrs. King, who participated with the defendant in the theft of the two calves. The offense mentioned in count 1 is alleged to have been committed on April 1, 1927, which the testimony shows to have been a rainy day. Mrs. King testified that some time between 9 and 10 o'clock on the evening of April 1st, the defendant met her at an appointed place on the highway and took her for an automobile ride in a Studebaker car belonging to the defendant. That she looked at the nameplate on the car and saw that it was a Studebaker. That for some time previously the defendant and Mrs. King had been taking automobile rides late at night. That on the night in question they drove out westerly from Gridley on the Gridley-Colusa highway to a place opposite a barn situate in a field and a short distance from the highway on property

belonging to Mrs. Nettie Frishholz. That one or the other of them spoke of going over to the barn and scouting around in search of calves. That the automobile was driven off the paved portion of the highway and permitted to stand along the side thereof. That the defendant and the witness got over the wire fence, went to the barn, found three young calves tied, two of them with ropes, took them from the barn and over to the fence adjoining the highway. That about this instant of time the lights of an automobile were seen coming from the west. That thereupon the defendant, leaving the witness and the two calves inside the field, got over the fence into his automobile and drove up the highway a short distance until after the automobile just mentioned had passed by, and then returned to the place where the calves were lying tied. That the witness and the defendant lifted the calves over the fence and put them into the defendant's automobile and drove back to the home of the witness, where the calves were turned loose in a field on property occupied by the witness and her husband. That some days afterward, when it became evident that the lost calves were being searched for, the husband of the witness took the two calves in question in an automobile over to a field in which was situate the tin barn, and which is mentioned in the testimony as the "tin-barn place." The evidence does not disclose who had possession of the premises known as the "tin barn." Mrs. King testified that the defendant came to the home of her husband and herself, mentioned the fact that trouble was likely to follow on account of the calves, and thereupon helped her husband to load the two calves in an automobile, and that her husband took the calves away. Mrs. King's testimony was further to the effect that the larceny of the calves took place about midnight. This, in brief, is the testimony of Mrs. King in relation to the larceny charged in count 1. As we have stated, there being no corroborating testimony relative to counts 2 and 3, it would serve no useful purpose to set forth her testimony in relation thereto. The following circumstances are relied upon as corroborative of the testimony of the accomplice as tending to connect the defendant with the commission of the offense: The Studebaker automobile owned by the defendant and taken from his possession a few days after the alleged larceny was found to be equipped with three smooth tires and one tire com-

paratively new. The three smooth tires were on the front wheels of the automobile and on the right rear wheel thereof. The comparatively new tire with the tread thereon still intact was found upon the left rear wheel of the defendant's automobile. As stated herein, rain had fallen on the day preceding the night of the alleged larceny. The automobile tracks alongside the highway in the neighborhood of the Frishholz barn, discovered the morning after the larceny, discloses that they were made by an automobile on which three of the tires were smooth and that the tire on the left rear wheel was comparatively new and the tread was intact. An examination of this tread was made by witnesses familiar with the different makes of tires, and these witnesses testified that the tracks made by the tire on the left rear wheel of the car that was stopped along the Frishholz barn on the night of the larceny were made by a Federal tire, and that the left rear wheel of the defendant's automobile was equipped with a Federal tire having a like tread with the tire that made the marks to which we have just referred. The testimony also showed a number of foot-tracks leading from the place where the automobile was stopped to and from the Frishholz barn. These tracks indicated that a man and a woman had participated in the larceny. The man's tracks were large; the woman's tracks were small. Measurements were made of these tracks, and especially of the tracks made by the larger of the two persons participating in the larceny. The length of these tracks were found to be identical with the length of the shoe worn by the defendant at the time of his trial. The width, however, was slightly in excess of the width of the shoes then worn by the defendant. Upon being arrested the defendant stated to the arresting officer "that if they were going to send him to the penitentiary, there would be more go with him," and also, that the calves could be found at the tin barn. The whereabouts of the automobile belonging to the defendant prior to about the hour of 9 or 10 o'clock on the evening of April 21, 1927, is not disclosed by the testimony. The narrative begins with the meeting of Mrs. King and the defendant between the hours of 9 and 10 P. M. of that day, at what appears to have been an understood meeting point between the defendant and the witness. The father of the witness testified that the Studebaker automobile was brought to and left at the place of

his residence, or rather, the residence belonging to the mother of the defendant, some time between 12 and 1 o'clock on the morning of April 2d. That he called out to the person driving the automobile there and received no answer, went out to see who it was, and the person who left the automobile ran away. The place where the automobile is thus said to have been left was about a mile and one-half distant from the residence of the defendant. The defendant denied all participation in the larceny, but admitted helping Mr. King load the two calves in the automobile driven by Mr. King, and in which the calves were by Mr. King taken away from his place of residence to the tin barn hereinbefore referred to. While that part of the corroborative testimony relating to the automobile tracks may be said to be exceedingly weak, owing to the fact of the large number of Federal automobile tires in use, and also due to the fact that the tread on all kinds of tires wear smooth, it is at least more than a coincidence that there should be found three smooth tires and one tire with the tread comparatively new on the automobile belonging to the defendant, and that his automobile should be found equipped with tires corresponding exactly with the manner in which an automobile should be equipped to make the tracks found near the Frishholz barn, from which the calves were stolen. This, taken in connection with the statement of the defendant that if he was sent to the penitentiary others would go with him, and the close measurement of the large tracks which we have referred to, to the size of the shoes worn by the defendant, and the admission by the defendant that he assisted Mr. King in loading the two calves into the automobile in which they were taken away by Mr. King, tended, in some measure, to connect the defendant with the larceny charged in count 1 and sufficiently fills the measure of proof required by section 1111 of the Penal Code.

At the request of the People, the court gave, among others, the following instructions to the jury, which, for convenience, we have numbered 1, 2, 3, and 4.

Instruction number 1 reads: ''The court instructs the jury that the recent possession of stolen property, unless satisfactorily explained is a circumstance tending to show the guilt of the defendant, and must be taken with the other evidence in this case to determine his guilt or innocence.''

Instruction number 2, reads: "If the jury believes, from the evidence, the property mentioned in evidence was stolen from the premises described in evidence, and as seen in the possession of the defendant shortly after being stolen, the failure of the defendant to account for such possession, or to show that such possession was honestly obtained, is a circumstance tending to show his guilt, and accused is bound to explain the possession in order to remove the effect of the possession as a circumstance to be considered in connection with other suspicious facts, if the evidence disclose such."

Instruction number 3 reads: "The court instructs the jury that the possession of recently stolen property is *prima facie* evidence of guilt, and throws upon the possessor the burden of explaining such possession, and, if unexplained, may be sufficient of itself to warrant a conviction, yet, when recently stolen property is found in the possession of another, if the attending circumstances, or from any explanation made, or in view of all the evidence or lack of evidence, if any, there remains a reasonable doubt as to whether or not such person stole the property, he should not be convicted."

Instruction which we have marked number 4 reads as follows: "The court instructs the jury that the testimony of an accomplice is competent evidence, and the credibility of such accomplice is for the jury to pass upon as they do upon any other witness; and, while the testimony of an accomplice will not sustain a verdict when uncorroborated, but if the testimony carries conviction, and the jury are convinced of its truth, they should give to it the same effect as would be allowed to a witness who is in no respect implicated in the offense."

In the consideration of these instructions it must be borne in mind that the stolen calves were not found in the possession of the defendant, and the only evidence of the defendant ever having had possession thereof consists of the testimony of the accomplice, Mrs. King. Other instructions were given by the court to the jury, but these are the ones of which the appellant complains, and to which our attention is directed. Before considering these instructions, we will state that a reading of the other instructions given by the court fail to remove any errors contained in the challenged instructions, if they are found to be erroneous.

The instruction which we have called instruction number 1 is taken literally from an instruction given in the case of *State* v. *McCarty*, 47 N. D. 523 [182 N. W. 754], and there approved as a correct instruction. An examination of the opinion of the court in that case, however, reveals that additional instructions were asked for by the defendant, which added to and made the quoted instruction complete. The instruction, taken alone, assumes the recent possession of stolen property on the part of the defendant. To make it a complete and accurate statement of the law it should have been predicated upon the jury believing from the evidence the fact of the recent possession of the stolen property by the defendant, and then, that such possession, unless satisfactorily explained, was a circumstance tending to show the guilt of the defendant, and should be taken with other evidence in the case in determining the guilt or innocence of the defendant. The insufficiency of this instruction to properly advise the jury becomes apparent when we examine the instruction which we have called number 2, given to the jury immediately after reading of instruction number 1.

In instruction number 2, the court assumes the very fact of possession of the stolen property by the defendant shortly after the theft. Instruction number 2 says: "If the jury believes from the evidence the property mentioned in the evidence was stolen from the premises described in the evidence, and as seen in the possession of the defendant shortly after being stolen," etc. Instruction number 2 appears to have been taken from the case of *People* v. *Alba,* 52 Cal. App. 603 [199 Pac. 894], but in transcribing this instruction the error was made of changing the word "was" to the word "as." It might be suggested that this appears in the record as a clerical error on the part of the clerk in making up the transcript, but an examination of the reporter's notes as transcribed by him shows that the instruction was read to the jury just as we have quoted it. And having gone to the jury in that language, it directly instructed the jury that the stolen property was recently seen in the possession of the defendant.

Instruction number 3 was given by the court to the jury immediately after the reading of the instruction which we have called instruction number 2. By instruction number 3 the court instructed the jury that "the possession of

recently stolen property is *prima facie* evidence of guilt and throws upon the possessor the burden of explaining such possession, and if unexplained, may be sufficient to (of) itself to warrant a conviction.'' This is not a correct statement of the law in the state of California, although it is a literal copy of an instruction given by a trial court in the state of Kansas, and found in the opinion of the supreme court of that state in the case of *State* v. *Brundige,* 114 Kan. 849 [220 Pac. 1039]. As given in that case, it was held not prejudicial, being a burglary case, in view of the fact ''that there was no basis in the evidence for a substantial doubt that whoever stole the wheat (subject of the larceny) also broke into the house in which it was stored.'' The opinion in the Brundige case is based upon two earlier cases decided by the supreme court of Kansas, to wit: *State* v. *Hoffman,* 53 Kan. 700 [37 Pac. 138], involving the theft of cattle, where it was held that ''the possession of stolen property recently after it is stolen is *prima facie* evidence of guilt, and if unexplained, is sufficient of itself to warrant a conviction.'' In the case of *State* v. *White,* 76 Kan. 654 [92 Pac. 829, 14 L. R. A. (N. S.) 556], the instruction to which we have referred was criticised but not condemned.

Beginning with the case of *People* v. *Chambers,* 18 Cal. 383, the courts of this state have laid down and consistently followed the statement of the law set forth in that case relative to the recent possession of stolen property. It is there said: ''Possession of stolen property is not alone sufficient to convict of larceny, though such possession is a circumstance to be considered in determining the guilt of the possessor.'' In *People* v. *Gassaway,* 23 Cal. 51, the trial court instructed the jury as follows: ''In the absence of good character, the recent possession of stolen property unexplained is *prima facie* evidence that the possessor is guilty of larceny.'' For the giving of this instruction the case was reversed, the court citing the cases of *People* v. *Chambers,* 18 Cal. 383, and *People* v. *Ah Ki,* 20 Cal. 177.

In *People* v. *King,* 8 Cal. App. 329 [96 Pac. 916], upon the subject of possession of stolen property, the trial court instructed the jury as follows: ''The court instructs the jury that the mere possession of stolen property, unexplained by defendant, however soon after the taking, is not of itself, and standing alone, sufficient to justify a conviction even

if it be shown, to a moral certainty and beyond a reasonable doubt that the alleged burglary was committed. But it is a circumstance which, taken in connection with other incriminating evidence in the case, if any there be, is to be considered by the jury in determining the question of the guilt or innocence of a defendant so charged. The failure of a defendant to account for such possession, or to show that such possession was honestly obtained, if it is found that there was such possession, is a circumstance tending to show his guilt, and he is bound to explain such possession in order to remove the effect thereof as a circumstance considered in connection with other incriminating facts, if any such are found in the evidence." This instruction is supported as a correct and accurate statement of the law by a long list of authorities cited on page 332 of the opinion in the case of *People* v. *King, supra.*

In the case of *People* v. *Alba,* 52 Cal. App. 603 [199 Pac. 894], from which the instruction which we have called number 2 was attempted to be taken, is to be found a correct statement of the law as held by the courts of this state, to wit: "The mere possession of stolen property, unexplained by the defendant, however soon after the taking, is not sufficient to justify conviction; it is merely a guilty circumstance which, taken in connection with other testimony, is to determine the question of guilt." Then follows the application of the instruction to the particular facts involved in that case. To tell the jury that the possession of stolen property recently after the alleged larceny constituted *prima facie* evidence of guilt was, in and of itself, sufficient to tell the jury that nothing further was necessary to warrant conviction, but the instruction with which we are now dealing went further and did tell the jury that that fact alone was sufficient upon which a conviction might be based. As said in *State* v. *Hardelein,* 169 Mo. 579 [70 S. W. 130], "a *prima facie* case is that amount of evidence which would be sufficient to counterbalance the general presumption of innocence and warrant a conviction, if not then encountered and controlled by evidence tending to contradict it," etc. And as defined in *State* v. *Lawlor,* 28 Minn. 216 [9 N. W. 698]: "*Prima facie* evidence is evidence which, standing alone and unexplained, would maintain the proposition and warrant the conclusion to support which it is introduced."

Practically all of the authorities follow the definition found in Bouvier's Law Dictionary, to wit: "*Prima facie* evidence of a fact is in law sufficient to establish the fact, unless rebutted." See, also, volume 6 Words and Phrases, page 5549. The correct statement of the law to be given to the jury is also found in 15 California Jurisprudence, page 932, section 26.

Without further citation of authorities it is sufficient to state that all the California cases having to do with the question of recent possession of stolen property as an incriminating circumstance hold that evidence of possession alone does not constitute *prima facie* evidence of guilt, and is not sufficient to warrant conviction.

The instruction, which for convenience we have called number 4, has been taken from the case of *Schriver* v. *State,* 41 Fla. 630 [27 South. 36], where the court had to do with a conviction founded upon the testimony of an accomplice, and where it is held contrary to the code rule in this state that conviction can be had upon the uncorroborated testimony of an accomplice. The instruction there given is worded as follows: "The testimony of an accomplice is competent evidence, and the credibility of such accomplice is for the jury to pass upon as they do upon any other witness, and while the testimony of an accomplice will sustain a verdict when uncorroborated, yet the testimony of an accomplice must be received with great caution; but if the testimony carries conviction, and the jury are convinced of its truth, they should give to it the same effect as would be allowed to a witness who is in no respect implicated in the offense." The instruction given to the jury in the instant case omits the cautionary portion thereof and inserts the word "not" after the word "will" and before the word "sustain." In commenting upon this instruction the supreme court of Florida stated that while it was somewhat inartificially worded, it substantially set forth the correct rule of law as laid down in that state. While instruction number 4, as given by the trial court in this case, might not, in and of itself, be held sufficient to compel a reversal of the judgment, it is not a correct statement of the law. The instruction tells the jury that the uncorroborated testimony of an accomplice will not sustain a verdict, but the jury is immediately advised that if the testimony of an accomplice carries convic-

tion, and if the jury be convinced of its truth, the jury shall give to it the same effect as would be allowed to a witness who is in no respect implicated in the offense. This is not correct. No matter if the jury be convinced of the truth of the testimony of an accomplice, such testimony cannot be given the same effect as may be given the testimony of one who is not implicated in an offense, unless such testimony be corroborated by evidence tending to connect the defendant with the crime charged, separate and apart from the testimony of the accomplice. In any view that may be taken of this instruction, it leads to a confused state of thought, and does not place before the jury a clear or accurate statement of their province when acting upon the testimony of an accomplice.

Our attention is called by respondent to the language of this court in the case of *People* v. *Hoosier*, 24 Cal. App. 746 [142 Pac. 514], where this court, speaking through Mr. Justice Hart, said: "If there is other evidence which measures up to the requirements of said section tending to connect the defendant with the commission of the crime charged, then the testimony of the accomplice is to be considered by the jury, as is any other testimony, and given such weight as they may conclude it is entitled to." This is far different from telling the jury that the testimony of an accomplice may be given the same effect as the testimony of one who is not an accomplice. One requires corroboration before it can be given any effect; the other may be acted upon independently. The language of the instruction, which, for convenience, we have called number 4, fails to make this distinction, and directly tends to leave the jury in doubt as to just what the powers of the jury may be under such circumstances. As we have stated, the opinion in the Florida case sets forth the law only where conviction is permitted upon the uncorroborated testimony of an accomplice. As no instruction was requested, based upon the language of subdivision 4 of section 2061 of the Code of Civil Procedure, comment upon its constitutionality would, so far as this case is concerned, be mere *obiter* and, therefore, is omitted.

In view of the instructions given to the jury as hereinbefore stated, which we must hold to be erroneous, does section 4½ of article VI of the state constitution apply? We think not. The corroborating testimony in this case is

just barely sufficient to warrant sending it to the jury upon count 1 set forth in the indictment. It is one of the border-line cases where it became necessary to search the transcript diligently in order to cull therefrom sufficient testimony tending to connect the defendant with the commission of the crime charged before it could be said that there was any corroborating testimony whatever. Without the giving of the erroneous instructions to which we have adverted, we cannot say that the jury would have brought in a verdict of guilty. Where the People elect to avail themselves of the testimony of one of a band of thieves, section 1111 of the Penal Code and the decisions of the supreme court of this state apply, and we have nothing to do with the policy of the law as enunciated in that section.

Some minor points have been raised by the appellant, but they are not of sufficient importance to demand consideration in this opinion.

For the reasons herein stated the judgment and order of the trial court are reversed and the cause remanded for a new trial.

Weyand, J., *pro tem.*, and Hart, Acting P. J., concurred.