[Crim. No. 1031.   Third Appellate District.—August 22, 1928.]

THE PEOPLE, Respondent, v. CARL HAACK, Appellant.

Clinton Johnson and Ray Manwell for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

HART, J.—Under an indictment found and returned to the superior court of Butte County by the grand jury thereof and filed in said court on the seventh day of May, 1927, the defendant was convicted of the crime of grand larceny, in that he, on or about the first day of April of said year, did unlawfully and feloniously steal and take away two calves, the personal property of one Nettie Frish-holz.

This is an appeal by the defendant from the judgment of conviction and the order denying his motion for a new trial.

The indictment as found was in four counts, viz.: Count 1, charging the offense of which the defendant now stands convicted and with which this appeal is alone concerned; count 2, charging him with the stealing, on or about the seventh day of April, 1927, of two calves, the property of one William Cardoza; count 3, charging him with the stealing, on or about the third day of March, 1927, of one calf, the property of one John Bettencourt; count 4, charging him with the stealing, on or about the second day of April, 1927, of one calf, the property of one William N. Lewis.

The trial of which the present appeals are the outgrowth is the second prosecuted against the defendant under the indictment. The result below of the first trial was the conviction of the accused under counts 1, 2, and 3 and his acquittal under count 4. He took an appeal to this court from the judgment and the order disallowing his motion for a new trial on his conviction at the first trial, and in an opinion by Mr. Justice Plummer of this court the judgment and the order were reversed and the cause remanded for a new trial. (*People* v. *Haack*, 86 Cal. App. 390 [260 Pac. 913].) It is, among other things, said in the opinion: "This appeal presents for our consideration two major reasons why the judgment of the trial court should be reversed, to wit: First, that conviction was had upon the uncorroborated testimony of an accomplice; and, second, alleged error on the part of the trial court in instructing the jury on matters of law.

"A careful reading of the testimony set out in the transcript discloses that there is absolutely no corroborating testimony, as required by section 1111 of the Penal Code, in so far as counts 2 and 3 of the indictment are concerned, and no further comment need be made thereon."

In the opinion it is further held that the record disclosed sufficient corroboration of the testimony of the accomplice to justify the submission of the case to the jury on the question of the defendant's guilt or innocence of the crime stated in the first count of the indictment, but properly held that a reversal was required because of erroneous in-

structions read to the jury by the court. A reversal of the judgment and the order followed, of course.

At the last trial, or the one from which the present appeals have arisen, the court directed the jury to return verdicts of acquittal as to counts two and three, and the jury acted accordingly. As above stated, we are concerned here only with count one, which, as also stated above, charges, in appropriate legal form, the defendant with the stealing, on April 1, 1927, of two calves belonging to Mrs. Frishholz.

The witness upon whose testimony the People principally relied at both trials for a conviction of the accused was a Mrs. Florence King, who testified at both trials that she participated with the defendant in the commission of the larceny charged in count one, and who, therefore, was confessedly an accomplice of the accused. (Pen. Code, sec. 1111.) As on the former appeal so on this, the point first urged is that the verdict fails of sufficient support for the asserted reason that the testimony of Mrs. King, the accomplice, was not corroborated by other testimony, as required by the section of the Penal Code just cited. Other assignments of error involved the action of the trial court in giving and disallowing certain instructions.

The testimony presented by the People at the second trial in support of the charge set forth in count one of the indictment is substantially the same as that likewise presented at the first trial. The opinion of Mr. Justice Plummer (cited above) contains a full and accurate statement of the facts brought out by the testimony so presented. It is not necessary, therefore, that we should repeat herein, in elaborate or extended detail, the evidence adduced at the trial responsible for the present appeals. There should be made herein, however, some reference to the facts as they were brought before the jury at the last or second trial, in order that a general outline of the case, as it was made by the evidence, may be with us as we consider the several legal points which defendant contends support his demand for a reversal.

Mrs. King testified: That she had on several different occasions previous to the first day of April, 1927, accompanied the defendant in the night-time on rides in the latter's automobile, which was a Studebaker; that at some time

in the afternoon of April 1, 1927, the defendant made an engagement with her for a ride that night; that between 9 and 10 o'clock P. M. of that day (on which rain had to some extent fallen) the defendant drove to a point near her home, situated not far distant from the town of Gridley; that she met him there and got into his auto, and that they thereupon drove westerly from her home on the highway until they reached a point on the highway opposite a barn situated in a field belonging to Mrs. Nettie Frishholz; that when reaching that point on the highway, or when in near approach thereto, either she or the accused (she was not certain which of the two) suggested that they go to the barn of Mrs. Frishholz, a short distance from the highway, and see if they could find some calves; that the Studebaker was thereupon moved to and parked on the unpaved portion of the highway opposite the barn, and the two then climbed over the fence, went to the barn, where they saw three young calves; that, with ropes, they tied two of the calves and took them to the fence bordering on the highway; that at this particular moment of time they observed the lights of an automobile which was approaching from the west, and that the defendant, leaving the witness in the field with the calves, passed over the fence, got into his car and drove "up the highway" a short distance, returning after the other automobile had passed the spot where the witness and the calves were; that, on returning, the accused, aided by the witness, lifted the calves over the fence, placed them in the rear portion of the automobile, thereupon returned to the ranch where the witness and her husband resided, and turned the calves loose in a field on said property. A short time thereafter in the month of April (the exact time or date the witness said she could not give) the defendant met and told the witness that "there was trouble with the calves," further saying: "Get rid of them, take them off the place"; that later the defendant was at her home and they then informed the husband of the witness (Lee King) that the calves had been stolen, and that her husband thereupon said that "he wanted no stolen calves on his place and that he wanted them to be taken away"; that defendant stated that he had no time to remove the calves from the King place, and that thereupon the witness' husband requested the defendant to assist

him (King) in loading the calves in his (King's) car; that the defendant complied with King's request and assisted the latter in lifting the calves into the car of King, who then took the animals to a field in which there was located what the witness referred to as a "tin barn." The defendant, when King removed the calves to the so-called "tin barn" premises, did not accompany the latter.

The circumstances upon which the People relied at the first trial for corroboration of the testimony of Mrs. King are fully and clearly stated in our opinion disposing of the former appeal as follows: "The Studebaker automobile owned by the defendant and taken from his possession a few days after the alleged larceny, was found to be equipped with three smooth tires and one tire comparatively new. The three smooth tires were on the front wheels of the automobile and on the right rear wheel thereof. The comparatively new tire with the tread thereon still intact was found upon the left rear wheel of the defendant's automobile. As stated herein, rain had fallen on the day preceding the night of the alleged larceny. The automobile tracks alongside the highway in the neighborhood of the Frishholz barn, discovered the morning after the larceny, discloses that they were made by an automobile on which three of the tires were smooth and that the tire on the left rear wheel was comparatively new and the tread was intact. An examination of this tread was made by witnesses familiar with the different makes of tires, and these witnesses testified that the tracks made by the tire on the left rear wheel of the car that was stopped along the Frishholz barn on the night of the larceny were made by a Federal tire, and that the left rear wheel of the defendant's automobile was equipped with a Federal tire having a like tread with the tire that made the marks to which we have just referred. The testimony also showed a number of foot tracks leading from the place where the automobile was stopped to and from the Frishholz barn. These tracks indicated that a man and a woman had participated in the larceny. The man's tracks were large; the woman's tracks were small. Measurements were made of these tracks, and especially of the tracks made by the larger of the two persons participating in the larceny. The length of these tracks was found to be identical with the length

of the shoe worn by the defendant at the time of his trial. The width, however, was slightly in excess of the width of the shoes then worn by the defendant. Upon being arrested, the defendant stated to the arresting officer 'that, if they were going to send him to the penitentiary, there would be more go with him,' and, also, that the calves could be found at the tin barn."

Precisely the same circumstances as were corroborative of Mrs. King's testimony were brought out at the second trial. In the opinion on the former appeal, this court declared that the circumstances as narrated in the foregoing excerpt tended to connect the defendant with the commission of the crime charged in count one, "and sufficiently fills the measure of proof required by section 1111 of the Penal Code." We adhere to that declaration not only as in its application to the first trial, but also as in its application to the last or second trial. Section 1111 of the Penal Code provides:

"A conviction cannot be had upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof."

In *People* v. *McLean*, 84 Cal. 480 [24 Pac. 32], it is stated that, while the corroborating evidence in that case was not strong, and that more is required by way of corroboration than to raise a mere suspicion (*People* v. *Thompson*, 50 Cal. 480), "yet the corroborating evidence is sufficient if it, of itself, tends to connect the defendant with the commission of the offense, although it is slight, and *entitled, when standing by itself, to but little consideration.*" (See, also, *People* v. *Melvane*, 39 Cal. 614; *People* v. *Garnet*, 29 Cal. 622; *People* v. *Clough*, 73 Cal. 351 [15 Pac. 5]; *People* v. *Blunkall*, 31 Cal. 778, 783 [161 Pac. 997, 999]; *People* v. *Miller*, 65 Iowa, 60 [21 N. W. 181]; *People* v. *Mayhew*, 150 N. Y. 346 [44 N. E. 971].)

It is not necessary that we should herein analytically examine the circumstances constituting the corroborating proof in this case to make it clear that, as such proof, they are sufficient under section 1111 of the Penal Code. The significance of those circumstances as corroborating proof

is clearly shown by the analysis thereof by Mr. Justice Plummer in the opinion handed down by this court on the former appeal herein, and to that opinion we refer for a full consideration and discussion of the proposition.

It is next objected that the court erred to the prejudice of the defendant's rights by allowing the People to introduce evidence addressed to the proof of the charges contained in counts two and three of the indictment. At the first trial of the accused on all of the four counts set forth in the indictment, the People, as this court correctly declared in its former opinion, utterly failed to introduce evidence corroborative of the accomplice, Mrs. King, as to counts two and three, and it was charged by counsel for the defendant that the prosecuting officers knew, at the beginning of the second trial, that they would not be able to present such corroborating evidence, because there was, as they knew, no such evidence available to them. It was hence objected that the testimony by Mrs. King regarding those counts would bring into the case proof of the commission by the defendant of other crimes which the prosecuting officers knew from the very beginning could not be legally proved. When objection was made in the court below to the evidence, special counsel for the People stated that he intended to introduce two witnesses who were not called to testify at the former trial and whose testimony would corroborate that of Mrs. King as to counts two and three. The judge, in overruling the objection, in effect stated that he had no reason for assuming that the prosecuting officers were not acting in good faith in the matter. It turned out, however, that the People were unable to present such corroborating proof. If the prosecuting officers at all times knew that they would not be able to corroborate the testimony of Mrs. King as to counts two and three, they certainly would be subject to just censure for attempting to prove the crimes alleged in those counts. But, like the court below, we cannot say but that those officers in good faith believed that they could make the proof required but were in that particular disappointed by the parties by whom they expected to make it. We must assume, in the absence of a contrary showing, that, at the time they stated that they had the corroborating testimony referred to, they honestly believed that they could make the required

598

proof. Assuming, however, that they knew, when examining Mrs. King respecting the crimes alleged in counts two and three that they would not be able to introduce corroborating evidence as to said crimes, it cannot justly be concluded that the accused was damaged by the conduct of the prosecuting officers as to that matter, since the court subsequently made an order directing the jury to acquit the defendant of the crimes therein alleged, from which order the jury, as intelligent persons, must have concluded that they were not at liberty to consider that evidence in determining the question of the guilt or innocence of the defendant under count one. The direction to acquit on those two counts in effect constituted a plain and unequivocal instruction to the jury that any evidence received regarding those counts had no bearing whatever on count one.

While the jurors were being examined upon their *voir dire*, in which proceeding the judge of the court took a part, the latter stated to the talesmen that "it will develop in this case that there are others who are not being prosecuted, or at least haven't been prosecuted up to this time. . . . Now, if the jury are going to refuse to convict this man solely on that account, what is the use of trying him, because that will be the fact." In its charge to the jury the court repeated substantially the foregoing statement in the following language: "The fact that others have not been arrested or not being prosecuted at this time is not before you and must not be considered by you for any purpose and not to be allowed to influence your verdict." It is argued by counsel for the defense that the effect of the foregoing statements to the jury was to tell the latter that, in deliberating upon the question of the guilt or innocence of the accused, they were not to consider for any purpose the testimony of any witness who the evidence might tend to show was connected in some way with the commission of the offense stated in count one. We cannot agree with that interpretation of the instructions in question. The court was right in stating to the jury that they had no right to take into consideration the fact that others who might have been connected with the commission of the crime were not being or had not been prosecuted; and in so stating that proposition to the jury the court used no language which a person of average intelligence would in-

terpret as meaning that they should not consider the testimony of such witnesses in their deliberation upon the case. It will be noted that the court did not say that the *testimony* of any assumed accomplices was not to be considered by the jury, but merely that the fact that any accomplices who might not have been arrested or prosecuted should not be permitted to influence them in making up their minds upon the ultimate question. The court further correctly instructed the jury that the testimony of one accomplice could not be corroborated by the testimony of another accomplice. ■ Of course, these instructions assumed that there were accomplices of the accused other than the witness Mrs. King, and presumably the court had in mind, in giving those instructions, Lee King and Mrs. Watson. The assumption was, of course, unwarranted, since both testified that they knew nothing about the larceny of the calves until after the animals were brought by the accused to their respective places; and there was no evidence, other than any inferences which might have been afforded by their own testimony and that of the defendant and Mrs. King, that Lee King and Mrs. Watson were in league with the accused and Mrs. King in the stealing of the calves before the theft took place. Hence the court, instead of assuming that Mrs. Watson and Lee King were accomplices should have submitted to the jury proper instructions upon the question of whether those parties were accomplices. But the assumption by the court that they were was an error favorable to the defendant for the reason that, if they were such accomplices, their testimony, which was susceptible to an interpretation which would be against the defendant, would not constitute competent corroboration of Mrs. King's testimony. Moreover, the court in other parts of its charge in clear language instructed the jury that they must take into consideration all the evidence in the case and also instructed the jury that they were to view with caution the testimony of Mrs. King, an admitted accomplice, or that of any other person that the jury might under the evidence conclude was also an accomplice.

The defendant complains of the refusal by the court to give several instructions which he proposed. Those of said instructions which were correct involved the statement of legal propositions which were covered elsewhere by the court's charge. One of the instructions was to the effect

that Mrs. King was an admitted accomplice. ██ The court so instructed the jury. The instruction proposed by the defendant that Lee King became an accomplice by reason of his attempt to conceal the calves after he was informed by Mrs. King that they had been stolen was, as indicated above, improper. Legally, even though he received the calves, knowing them to have been stolen, he would not be an accomplice under section 1111 of the Penal Code. The same would be true as to Mrs. Watson. Said instruction was properly refused. ██ The other instructions proposed by the defendant and disallowed by the court merely involved the statement of certain elementary propositions of law which are sometimes referred to as "stock instructions," viz.: The presumption of the innocence of the accused, the elements which the jury should consider in passing upon the credibility of the witnesses, the necessity for the concurrence of the entire jury to reach a verdict, the right of each juror to use his own judgment in arriving at a conclusion, and his duty to remain steadfast to his own judgment until convinced by a full, fair and careful consideration of the evidence that his judgment was erroneous, that the burden of proving his innocence was not on the defendant, and the burden of proving guilt was upon the People. As stated, all these instructions were given by the court in language so plain that it could not be misunderstood. We may add that the charge of the court contained the statement in clear language of every legal principle applicable to the case. The court seemed to have been exceedingly careful in cautioning the jury to consider the testimony of the admitted accomplice with care, for in a number of instances it called the attention of the triers to the fact that Mrs. King was an accomplice and that it was necessary that her testimony should be corroborated by evidence which of itself or alone would tend to connect the defendant with the commission of the crime. The instructions condemned in our former opinion were, of course, excluded at the second trial.

The defendant seems to have had a fair and impartial trial and, so far as we can judge from the record before us, was justly as well as legally convicted.

The judgment and the order are affirmed.

Finch, P. J., and Plummer, J., concurred.