[Crim. No. 1218.   Third Appellate District.—October 20, 1932.]

THE PEOPLE, Respondent, v. LYLE CLYDE McGOWAN, Appellant.

G. Fletcher Dodd and John F. Quinn for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

PLUMMER, J.—The defendant was tried upon an information containing a number of counts charging petty larceny, together with a count charging a previous conviction of a felony. The defendant pleaded guilty to the count charging a prior conviction, and was found guilty on counts Nos. 10 and 11, charging petty larceny. The appeal is from the judgment of conviction, and from the order denying the defendant a new trial.

Count 10 charges that the defendant, in the state of Oregon, stole and carried into the state of California, certain personal property belonging to one James Le Clair, to wit: "One gill net of the reasonable market value of $80.00, more or less, lawful money of the United States, and said defendant did then and there bring and transport into the County of Del Norte, State of California, the said personal property hereinabove described, contrary," etc.

Count 11 charges the commission of petty larceny by the defendant as follows: "Said Clyde McGowan, on or about the 1st day of August, 1931, at Wedderburn, Curry County, State of Oregon, wilfully, unlawfully and feloniously took, stole and carried away the following described personal property belonging to one Arthur Hanseth, to-wit: 2 chests of tools of the reasonable market value of $150.00." The count further charges that the defendant transported said property from the state of Oregon into the county of Del Norte, state of California.

Upon this appeal two grounds are alleged for reversal: First—That there is no evidence, outside of the alleged possession in Del Norte County, California, to show that the defendant stole the articles mentioned in the state of Oregon, or that he transported the same into the state of California. Second—That the court erred in its instructions to the jury.

Section 497 of the Penal Code reads as follows: ''Every person who, in another State or country, steals or embezzles the property of another, or receives such property, knowing it to have been stolen or embezzled, and brings the same into this State, may be convicted and punished in the same manner as if such larceny or embezzlement, or receiving had been committed in this State.''

Subdivision 2 of section 27 of the Penal Code specifies that: ''All who commit any offense without this State which, if committed within this State would be larceny, robbery or embezzlement under the laws of this State, and brings the property stolen or embezzled, or any part of it, or are found with it, or any part of it, within this State,'' are liable to punishment.

The record in this case shows that on or about the 1st of August, 1931, a certain house at Wedderburn, in Curry County, Oregon, was broken into and two chests of tools taken therefrom. These tools belonged to a man by the name of Arthur Hanseth. Hanseth was a witness at the trial, and identified the property mentioned in the information as belonging to him, stating that they were taken from Curry County, Oregon, and also that a number of tools had his name thereon. James Le Clair, the witness who claimed to be the owner of the gill-net, testified that the gill-net was taken from his possession in Curry County, Oregon, on or about the first day of August, 1931. This witness was able to identify the gill-net by certain knots that he had tied therein, and other identifying marks thereon. At about the same time the testimony shows that the defendant was in possession of the property just referred to, and took it to the barn belonging to, or under the control of a witness named Kayle, and there stored the net and chest of tools. This witness testified as follows: ''I have known the defendant 3 or 4 years. I have seen a net just like that one (referring to an exhibit). Clyde McGowan brought it up in his car; he brought it up and I helped him carry

it into the barn; he wanted to put it in the barn. I said, 'Why don't you keep it at home?' He said, 'I am going away and somebody will steal it.' I said, 'If you bring it here, the rats might eat it up.' Mrs. McGowan said, 'Oh, let him put it in there; he's going away.' Q. Did you ever ask him where it came from? A. I asked him why didn't he leave it in the boat. He said, 'I had it on the boat; I got it off the boat.' He said he got the net with the boat; when he bought the boat he got the net with it. Q. Now, I show you these two chests of tools, and ask you if you ever saw them before? A. Well, he brought those two boxes at the same time. Q. At the same time he brought the net? A. Yes sir. Q. Did you ask him where he got those? A. No sir.''

The record shows that the net and the tools were found in the barn described by the witness Kayle. The witness Kayle fixed the time as the latter part of July, 1931; did not think it was so late as the 1st of August. The witness left his home on or about the 8th or 10th of August, and it was some time before that date that the net and the tools were brought to the barn by the defendant. The defendant's testimony as to where he got the net and the tools is as follows: ''Q. How did you come by that net? A. I bought that net. Q. From whom? A. Fellow by the name of Lindsay on the Klamath River. Q. Does he live on the Klamath? A. I suppose he does. Q. Have you seen him there many times? A. I don't know; he and I were just mere acquaintances. I don't know if he lives there or stays there once in a while during the fishing season. Q. About when was it you bought that net from him? A. Well, I think just about the time the fishing season opened in Smith River. Q. That would be sometime in September? A. Round that time. Q. Now, where did you get these tools that have Art Hanseth's name on them? A. I got them from a camper over on the beach—Ocean Drive. Q. Do you know his name? A. No. Q. Anybody you ever saw before? A. Yes, I seen him up there. Q. Was he in an automobile or afoot? A. Automobile. Q. What kind of a car? A. Old Ford. Q. Touring car? A. Kind of truck— delivery truck. Q. Have you seen him since? A. Yes, seen him once or twice afterwards. Q. Is he still around here? A. I don't know. Q. Have you seen him lately? A. Well,

no I have not. Q. Where did you get these four lengths of rope? Well, I found a cache down by the dump. Q. Was there anything else besides those four ropes in the cache? A. Yes, there was. Q. What else was there? A. Some paint; some brushes. Q. Those brushes the man from the Oregon State Highway Commission testified about this morning? A. They looked like them. Q. How about all that Japan drier? A. Well, I guess that was in with it. Quite a number of stuff there. Q. What about these wrenches there along with the rope and so on, were those in the same cache? A. Yes.''

The defendant was then questioned in regard to a number of articles which were taken from the same house from which the two chests of tools were taken, were missed at the same time, and found in possession of the defendant, but are not included within count 11, upon which defendant was convicted, save and except as to the tools. The testimony shows conclusively that the defendant had possession of the net at least a month before the time he stated he got it from a man by the name of Lindsay on Klamath River. The testimony as to where the defendant obtained the chest of tools is, of course, an apparent fabrication. The testimony of the defendant from which we have quoted is the testimony given by him upon his preliminary examination and read into the record by the district attorney. There was also introduced in evidence a statement made by the defendant, from which we quote the following: ''Q. All those tools at the house; did they belong to you? A. Yes. Q. Where did you get all those tools? A. Well, sir, they came to me pretty honest; I worked for them; I worked for a fellow on Ocean Drive. Q. Those two that had marks on them—didn't you know they did not belong to you? A. I don't see why; I worked and paid for them. Q. They were marked; they had somebody's else name on them. Didn't you know they did not belong to you? A. Well, I got them honest enough; done the work.; took the tools for work. Q. Where did you get the first-aid kit? A. Well, I had that a long time up there. I told you I bought it. I had it before I was sent away that time. Been there 7 or 8 years. Q. Where did you buy that paint? A. What paint is it? Q. That red paint. A. Well, I don't know where any red paint came from; I never had any, I don't

believe.'' The statement of the defendant then proceeds to account for property alleged to have been stolen, but not included in either count 10 or 11.

It is unnecessary to review the testimony of the officers who searched the premises occupied by the defendant and who recovered the property alleged to have been stolen and brought into the county of Del Norte by the defendant, as a good portion of the testimony refers to the recovery of stolen property mentioned in the other counts. It is sufficient to state that the testimony of the witnesses shows, as exhibited by the excerpts set forth herein, that no reasonable explanation was given of the possession of the stolen property, and it is also shown that it was in the possession of the defendant very shortly after the commission of the larceny in Curry County, Oregon. As contended for by the plaintiff there is no direct testimony that the defendant committed the larceny in Curry County, Oregon, nor is there any direct testimony that the defendant brought the stolen property into the county of Del Norte, but the circumstances connected with the obtaining of the property, together with the possession immediately after the larceny, and the inherent improbability of the account given by the defendant, furnished a basis upon which the jury was warranted in concluding that the defendant was guilty of larceny.

The appellant insists that the court committed prejudicial error in refusing defendant's requested instruction No. 14, which instruction, after quoting section 497 of the Penal Code, is as follows: ''In this connection the court instructs the jury that before the defendant can be convicted under said Section 497 of the Penal Code, it must be proven that the property was actually stolen or embezzled or received by the defendant in the State of Oregon, and if it is not established beyond a reasonable doubt and to a moral certainty that the property was stolen or embezzled or received by the defendant in said State of Oregon, then the defendant, under such circumstances,' cannot be found guilty as to any charge involving the stealing or receiving stolen property in the State of Oregon. In addition, it must also be established that the defendant brought the property into the State of California, and if it is not established beyond a reasonable doubt and to a moral cer-

tainty that he did bring such property into the State of California, then he cannot be convicted on any of the counts involving the taking or stealing or receiving of property in the State of Oregon.'' A reference to the instructions given by the court, however, leads to the conclusion that the defendant's requested instruction was sufficiently covered. The jury was instructed that every element of the offense necessary to be proven must be proven beyond a reasonable doubt; that they must be convinced beyond a reasonable doubt that the theft alleged in the two counts was committed in the state of Oregon by the defendant; that the defendant brought the property into this state from the state of Oregon. The court then gave to the jury the following instructions:

''You are instructed that the mere possession of stolen property, unexplained by the defendant, however soon after the taking, is not sufficient to justify a conviction. It is merely a circumstance tending to show guilt which, taken in connection with other testimony, is to determine the question of guilt. There must be evidence outside of, beyond or independent of the fact of possession of property recently stolen, if such be the fact, in order to warrant a jury in convicting a defendant of burglary. But where the evidence establishes the fact beyond a reasonable doubt that the person who had the recent possession of stolen property gives false, contradictory, or inconsistent accounts of how he came by that possession, that is a circumstance that the jury should consider in arriving at a verdict, and they can and should consider the fact that the person has possession of property recently stolen, in connection with all the other circumstances in the case, in arriving at their verdict.

''If you believe from the evidence that the personal property mentioned in evidence was stolen from the premises described in evidence, and received into possession of the defendant shortly after being stolen, the failure of the defendant to account for such possession, or to show that such possession of the property was honestly obtained, is a circumstance tending to show his guilt, and the accused is bound to explain the possession in order to remove the effect of the possession as a circumstance to be considered,

in connection with other suspicious facts, if the evidence disclose any such.

"You are instructed that every person who, in another State, steals the property of another, and brings it into this State, or who, in another state commits an offense which, if committed within this State would be theft, and brings the property stolen, or any part of it, within this State, or is found with it, or any part of it, within this State, is punishable within this State in the same manner as if the crime had been committed wholly within this State.

"If you find from the evidence, beyond a reasonable doubt, that the defendant Lyle Clyde McGowan committed any or all of the crimes of theft charged in counts IX, X and XI of the information, within the State of Oregon, and that he brought the proceeds of such theft into this State and this County, or that he was found with such proceeds of any such theft, or with any part of such proceeds, within this State and County, it will be your duty to find him guilty of the offense or offenses so charged and proven."

The giving of these instructions is assigned as reversible error.

■ The instruction as to the possession of stolen property given by the court is in substance the instruction which was given in the case of *People* v. *King,* 8 Cal. App. 329 [96 Pac. 916], and approved by this court in the case of *People* v. *Haack,* 86 Cal. App. 390, 398, 399 [260 Pac. 913].

■ As to the other instructions given by the court, the objection urged is that they go further than the counts referred to in the information. Both counts upon which the defendant was convicted charge only the larceny and the bringing of the property into the county of Del Norte. The instructions cover section 497 of the Penal Code and include that portion of section 27 of the Penal Code which we have heretofore quoted, where it refers to stolen property, or any part of it, being found in possession of the defendant.

It is apparent, however, that no miscarriage of justice resulted from this alleged error, and therefore that section 4½ of article VI of the Constitution applies. The possession of the property was not denied by the defendant; he claimed ownership, and the account which he gave as to the

manner in which he acquired title and obtained possession, and the circumstances connected therewith were the facts upon which the jury were instructed to act.

Two facts are set forth in the statute giving the court jurisdiction in cases of larceny where the theft takes place without the state, to wit: First, bringing the stolen property into the state; and second, being found in possession of the stolen property within the state. The offense for which one is convicted is the offense of larceny, and not the offense of having or receiving stolen property. The possession having been admitted by the defendant, no prejudicial error was committed by the court in referring to the possession in its instructions.

The judgment and order are affirmed.

Pullen, P. J., and Thompson (R. L.), J., concurred.